Maria C. Rodriguez (SBN 194201)
Seyfarth Shaw LLP
2029 Century Park East, Suite 3300
Los Angeles, California 90067-3063
mrodriguez@seyfarth.com
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Robert L. Zisk (SBN 07147)
Eric L. Yaffe  (SBN 439750)
Jeffrey L. Karlin (SBN 144488)
GRAY, PLANT, MOOTY
MOOTY & BENNETT, P.A.
The Watergate
2600 Virginia Avenue, N.W., Suite 1111
Washington, D.C.  20037-1905
Telephone: (202) 295-2200
Facsimile: (202) 295-2250

Attorneys for Plaintiff
BASKIN-ROBBINS FRANCHISED
SHOPS LLC, a Delaware limited liability company,
BR IP HOLDER LLC, a Delaware limited liability company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

| | |
|---|---|
| BASKIN-ROBBINS FRANCHISED SHOPS LLC, a Delaware limited liability company, BR IP HOLDER LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>SUKPRAN GILL, GURMEET GILL, and ISHER GILL, residents of California,<br><br>Defendants. | Case No. C07-02441-PJH<br><br>*Honorable Phyllis J. Hamilton*<br><br>**FIRST AMENDED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**<br><br>Complaint Filed: *May 7, 2007* |

This is an action for breach of contract, trademark infringement, trade dress infringement, unfair competition and fraud arising out of the fact that the owners and operators of Baskin-Robbins franchises in Concord and Pittsburg, California, have opened and are operating a competing ice cream store under a different trade name.  Based on these actions, Plaintiffs Baskin-Robbins Franchised Shops LLC

**FIRST AMENDED COMPLAINT**

LA1 6645639.1

and BR IP Holder LCC (hereinafter collectively referred to as "Baskin-Robbins") issued the franchisees a Notice of Default and Termination with respect to their Franchise Agreements. For the reasons set forth below, Baskin-Robbins seeks preliminary and permanent injunctive relief against the franchisees to enforce the termination of their Franchise Agreements, and to compel Defendants to cease operating the competing ice cream store.

## PARTIES

1. Plaintiff Baskin-Robbins Franchised Shops LLC, successor-in-interest to Baskin-Robbins USA Co., is a Massachusetts Limited Liability Company with its principal place of business at 130 Royall Street, Canton, Massachusetts (hereinafter referred to as "Baskin-Robbins"). Baskin-Robbins is engaged in the business of franchising independent businesspersons to operate Baskin-Robbins stores throughout the United States. Baskin-Robbins franchisees are licensed to use the trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Baskin-Robbins System, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2. Plaintiff BR IP Holder LLC, successor-in-interest to Baskin-Robbins Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. Br IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins," and related marks. Baskin-Robbins has the exclusive license to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores. Unless otherwise specified, Baskin-Robbins Franchised Shops LLC and BR IP Holder LLC are collectively referred hereinafter as "Baskin-Robbins."

3. Defendant Sukpran Gill is a natural person and a citizen and resident of the State of California. At all times relevant to this action, Sukpran Gill was an owner and operator of a retail ice cream store located at 4493 Century Boulevard, Pittsburg, California (the "Pittsburg Store"). Defendant was a Baskin-Robbins franchisee for the Pittsburg Store pursuant to a Franchise Agreement dated October 26, 1996 ("the Pittsburg Franchise Agreement"). Defendant was licensed to use the Baskin-Robbins trademarks, trade names and trade dress.

4. Defendant Gurmeet Gill is a natural person and a citizen and resident of the State of California. At all times relevant to this action, Gurmeet Gill was also an owner and operator of the Pittsburg Store. Defendant was a Baskin-Robbins franchisee for the Pittsburg Store pursuant to the Pittsburg Franchise Agreement. Defendant was also licensed to use the Baskin-Robbins trademarks, trade names and trade dress.

5. Defendant Sukpran Gill was also an owner and operator of a retail ice cream store located at 1924 Grant Street, Suite #2, Concord, California (the "Concord Store"). Defendant was a Baskin-Robbins franchisee for the Concord Store pursuant to a Franchise Agreement dated April 22, 2004 (the "Concord Franchise Agreement").

6. Defendant Isher Gill, is a natural person and a citizen and resident of the State of California.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116 (a) & 1121, and 28 U.S.C. §§ 1331, 1332, 1338, & 1367(a). The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. This Court has *in personam* jurisdiction over Defendants because they are residents of this district who also conduct business in this District, and the events giving rise to Baskin-Robbins' claims occurred in this District.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

10. Baskin-Robbins is the franchisor of the Baskin-Robbins System.

11. BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins has the exclusive license to use and license others to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

12. BR IP Holder LLC owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks. Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

13. The Baskin-Robbins trademarks are utilized in interstate commerce.

14. The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

15. Baskin-Robbins and its franchisees currently operate approximately 2,200 stores in the United States and 2,600 stores outside of the United States. In the fifty years since the Baskin-Robbins System began, millions of consumers have been served in Baskin-Robbins stores.

16. As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees.

17. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

## THE PARTIES' RIGHTS AND OBLIGATIONS
## UNDER THE FRANCHISE AGREEMENTS

18. Defendants are licensed to use the Baskin-Robbins trade names and trademarks in accordance with the terms of the Pittsburg Franchise Agreement and Concord Franchise Agreement.

19. Both the Pittsburg Franchise Agreement and the Concord Franchise Agreement contain acknowledgments and agreements by Defendants that franchisees are prohibited from owning, operating or becoming involved in the operation of an ice cream store operating under a trade name other than Baskin-Robbins during the term of the agreements.

20. The applicable paragraphs of the Pittsburg Franchise Agreement include the following:

    a. Paragraph 15.2. FRANCHISEE shall not, during the term of this Agreement, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership or corporation:

    b. Paragraph 15.2.1. divert or attempt to divert any business or customer of the Retail Unit to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Names and Marks or the System;

    c. Paragraph 15.2.3. own, maintain, operate, engage in, or have any interest in any business which is the same as or similar to the Retail Unit. Same or similar shall mean more than five percent (5%) of the gross revenue is derived from the sale of frozen dairy desserts.

    d. Paragraph 15.7. FRANCHISEE agrees to pay all the costs and expenses (including reasonable attorneys' fees) incurred by BASKIN-ROBBINS in connection with the enforcement of this Section 15.

        e.      Paragraph 15.8. FRANCHISEE acknowledges that FRANCHISEE's violation of any of the terms of this Section 15 would result in irreparable injury to BASKIN-ROBBINS for which no adequate remedy at law may be available, and FRANCHISEE accordingly consents to the issuance of an injunction prohibiting any conduct by FRANCHISEE in violation of the terms of this Section 15, without the requirement for the posting of bond, the same being hereby waived by FRANCHISEE.

21. The Pittsburg Franchise Agreement further provides, the following:

        a.      Paragraph 16.3. FRANCHISEE shall be deemed to be in default under this Agreement upon the occurrence of any of the following events. BASKIN-ROBBINS may, at its option, terminate this Agreement and all rights granted FRANCHISEE hereunder, without affording FRANCHISEE any opportunity to cure the default, effective immediately upon written notice from BASKIN-ROBBINS.

        b.      Paragraph 16.3.8. If FRANCHISEE fails to comply with the covenants set forth in Section 15.

22. The Pittsburg Franchise Agreement also contains acknowledgments and agreements by the Defendants concerning their post-termination obligations. For example, the applicable paragraphs of the Franchise Agreement include:

        a.      Paragraph 17.1.2. FRANCHISEE shall immediately cease to operate the Retail Unit, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former FRANCHISEE of BASKIN-ROBBINS;

        b.      Paragraph 17.1.3. FRANCHISEE shall immediately and permanently cease to use, in any manner whatsoever, the System, including, without limitation, methods, procedures and techniques associated therewith, and all Proprietary Names and Marks and distinctive forms, slogans, symbols and devices associated with the System or the Products. In particular, FRANCHISEE

shall cease to use, without limitation, all signs, advertising materials, displays, stationary, forms, and any other articles which display the Proprietary Names and Marks.

23. The Franchise Agreement (at Paragraphs 17.1.1 and 17.1.9) provides that, in the event of termination for any default of Defendants, they shall pay to Baskin-Robbins all damages, costs, and expenses, including attorneys' fees, incurred by Baskin-Robbins.

24. The Concord Franchise Agreement executed by Defendant Sukrpan Gill contains virtually identical in-term covenant not to compete.

25. The applicable provisions of the Concord Franchise Agreement include the following:

    a. Paragraph 8.0. During the term of this Agreement, including any extension or renewal thereof, and for a period of two (2) years after expiration or termination of this Agreement, regardless of the cause of termination (hereinafter called the "Post-Term Period"), neither FRANCHISEE, nor any partner, officer, director, shareholder or member of FRANCHISEE, as the case may be shall:

    b. Paragraph 8.0.1. Divert or attempt to divert any business or customer of the Unit to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly any other act injurious or prejudicial to the goodwill associated with FRANCHISOR's Proprietary Marks and System(s);

    c. Paragraph 8.0.3. [O]wn, maintain, engage in, be employed by, or have any interest in any other business which sells or offers to sell the same or substantially similar products to the type FRANCHISOR requires to be offered by FRANCHISEE at the Unit; provided that, during the Post-Term Period only, the provisions of this paragraph 8.0.3 shall not apply to another business located more

than five (5) miles from this or any other unit operating under the same Proprietary Marks of FRANCHISOR.

26. In addition, the Concord Franchise Agreement contains a cross-default provision which allows Baskin-Robbins to terminate the Concord Franchise Agreement without the opportunity to cure the default if Baskin-Robbins has terminated any other franchise agreement between itself and the franchisee:

   a. Paragraph 9.0.  FRANCHISEE shall be in default under this Agreement:

   b. Paragraph 9.0.4.  If any other franchise agreement between FRANCHISEE and FRANCHISOR or any affiliated entity is terminated by reason of FRANCHISEE's default thereunder[.]

   c. Paragraph 9.1.4.  <u>No Cure Period.</u>  No cure period shall be available if FRANCHISEE is in default under any paragraph designated 9.0.1 through 9.0.4 above[.]

27. The Concord Franchise Agreement also contains acknowledgments and agreements by Defendant Sukpran Gill concerning his continued use of Baskin-Robbins's marks and any methods associated with the name "Baskin-Robbins" after the termination of the Franchise Agreement.  Defendant Sukpran Gill agreed that any unauthorized or continued use of the marks after termination constitutes irreparable harm subject to injunctive relief.  (Paragraph 7.1.)

28. Defendants further agreed that, upon termination, they would comply with all post-termination obligations, including immediately ceasing to use Baskin-Robbins' trademarks and any methods associated with the Baskin-Robbins' System.  (Paragraphs 9.4.2, 9.4.3.)

29. Under Paragraph 9.4.7, in the event of termination of the Franchise Agreement, Baskin-Robbins shall have the express option to compel Defendants to "assign to FRANCHISOR any interest which FRANCHISEE has in the Lease or any other Agreement related to the Premises."

30. Pursuant to Paragraph 9.4.6, Defendant Sukpran Gill similarly granted Baskin-Robbins the option, upon termination of the Franchise Agreement, to purchase "any or all of the equipment, interior and exterior signs, trade fixtures, furnishings and other personal property of FRANCHISEE used in connection with the Unit."

31. The Franchise Agreement, at Paragraph 9.3, provides that Defendant Sukpran Gill shall pay to Baskin-Robbins all damages, costs and expenses, including attorneys' fees, incurred by Baskin-Robbins as a result of any breach of the Franchise Agreement by Defendant and his failure to cure said default following notice.

**DEFENDANTS' DEFAULTS AND TERMINATION**

32. An investigation conducted by Baskin-Robbins has revealed that commencing in March 2007, Defendant Sukpran Gill has opened and operated a retail ice cream store in American Canyon, California.

33. Sukpran Gill negotiated the terms of a commercial lease for a property located at 101 W. American Canyon Road, #512, American Canyon, California.

34. Sukpran Gill identified himself to the property management company leasing the space, Browman Development Company, Inc., as the owner of the business that would be opened in the leased space.

35. In March 2007, Sukpran Gill applied for a business license with the City of American Canyon under his father's name, Isher Gil, to operate an ice cream store operating under the name "Country Creamery."

36. The application for the Country Creamery business license filed with the City of American Canyon identified Sukpran Gill's home address and telephone number as the owner's contact information.

37. Sukpran Gill had direct contact with employees of the City of American Canyon with respect to opening the Country Creamery store, including

1  employees in the Planning .& Building Department and the Office of the Business
2  License Coordinator.

3  38.    Sukpran Gill identified himself to employees of the City of American
4  Canyon prior to the opening of the Country Creamery store as the owner of the
5  business.

6  39.    In March 2007, Sukpran Gill applied for a Permit to Operate for the
7  Country Creamery store in his father's name from the Napa County Department of
8  Environmental Management.

9  40.    In March 2007, Sukpran Gill applied for a Seller's Permit for the
10 Country Creamery store in his father's name from the California State Board of
11 Equalization.

12 41.    In the weeks prior to its opening in April 2007, Sukpran Gill was
13 frequently on the premises on the Country Creamery store assisting in getting the
14 premises ready for business.

15 42.    Sukpran Gill was actively involved in the hiring of employees to work
16 at the Country Creamery store prior to its opening.

17 43.    Sukpran Gill identified himself to employees who were hired to work
18 at the Country Creamery store as the owner of the business.

19 44.    In April 2007, Sukpran Gill purchased ice cream dipping cabinets and
20 an ice machine from Baskin-Robbins using checks from the bank accounts for the
21 Concord and Pittsburg Stores.

22 45.    The dipping cabinets and ice machine purchased by Sukpran Gill had
23 been previously installed in Baskin-Robbins stores located in Livermore,
24 California and Hayward, California.

25 46.    This equipment was not offered for sale to the general public, but was
26 only offered for sale to Baskin-Robbins franchisees for installation at Baskin-
27 Robbins stores.

28

47. Sukpran Gill intentionally misrepresented the purpose for purchasing this equipment by informing Baskin-Robbins that it was intended "back-up" equipment for the Concord and Pittsburg Stores.

48. Shortly after the dipping cabinets and ice machine were purchased, they were installed in the Country Creamery location.

49. Sukpran Gill knew that Baskin-Robbins would not have sold him the equipment if he told the franchisor of his plans to use it in the Country Creamery store.

50. Sukpran Gill falsely stated to Baskin-Robbins that the equipment was to be used as back-up for his current locations and failed to disclose the true nature of his plans with the intent of defrauding Baskin-Robbins into selling him equipment.

51. Baskin-Robbins was not aware of the fact that Sukpran Gill intended to use the equipment at the Country Creamery store until it was actually installed in the location in April 2007.

52. If Sukpran Gill had informed Baskin-Robbins of the true purpose for his purchase of the equipment, it would not have sold him the equipment. Such facts were not available to Baskin-Robbins until such time as the equipment was installed in the Country Creamery store.

53. The Country Creamery store opened for business in April 2007.

54. The nearest Baskin-Robbins store is located in Vallejo, California, approximately one mile from the Country Creamery store and is owned by another Baskin-Robbins franchisee.

55. The Vallejo store pays the franchisor a percentage of its gross sales each week in royalty fees and a contribution to the Baskin-Robbins' System advertising fund.

56. The Country Creamery store sells ice cream on a retail basis to the general public for one dollar ($1) a scoop, which is substantially less than the price

-11-

**FIRST AMENDED COMPLAINT**

charged at Sukpran Gill's Baskin-Robbins store or the nearby Baskin-Robbins store in Vallejo.

57. Sukpran Gill worked in the Country Creamery store after it opened for business, both making ice cream and selling ice cream products to the public.

58. Since the opening of the Country Creamery store in April 2007 and for the following two months, sales at the nearby Baskin-Robbins store in Vallejo, California have declined by at least 12% compared to the prior year's sales.

59. The decline is sales at the Baskin-Robbins store in Vallejo has also meant that Baskin-Robbins has collected less in royalties and advertising fund contributions from this location than it did during the same period a year ago and less than it would have had the Country Creamery store not opened for business.

60. At no time did Sukrpan Gill inform Baskin-Robbins of his efforts to open and operate the Country Creamery location.

61. Sukpran Gill took active steps to conceal his efforts to open and operate the Country Creamery store by using his father's name on the applications for Country Creamery's lease, business license, health permit and sales tax permit.

62. Accordingly, Sukpran and Gurmeet Gill have violated the in-term covenant not to compete set forth in both the Pittsburg Franchise Agreement and the Concord Franchise Agreement by owning, maintaining, engaging in, being employed by, and/or having any interest in a business which sells or offers to sell the same or substantially similar products that is offered for sale at their franchises.

63. Based on the foregoing, Sukpran and Gurmeet Gill's conduct constitutes good cause for the termination of both the Pittsburg Franchise Agreement and the Concord Franchise Agreement.

64. Sukpran and Gurmeet Gill's actions have also caused and continue to cause irreparable harm to Baskin-Robbins, including harm to Baskin-Robbins' reputation and goodwill.

65. Pursuant to the applicable provisions of the Pittsburg Franchise Agreement and the Concord Franchise Agreement, on April 30, 2007, Baskin-Robbins sent Sukpran and Gurmeet Gill a Notice of Default and Termination, terminating both the Pittsburg Franchise Agreement and the Concord Franchise Agreement based on their establishment and operation of the Country Creamery store.

66. The Notice of Termination demanded that they cease using Baskin-Robbins' trade names and proprietary marks immediately upon the effective date of termination, and thereafter comply with their post-termination obligations under the Pittsburg Franchise Agreement and Concord Franchise Agreement.

67. As of the date of the filing of this pleading, Sukpran and Gurmeet Gill continue to operate the Pittsburg and Concord Franchise Agreements and have yet to comply with their post-termination obligations under the Pittsburg Franchise Agreement and Concord Franchise Agreement.

## COUNT I

## Breach of Contract

## (Against Defendants Sukpran Gill and Gurmeet Gill)

68. The allegations of paragraphs 1 through 67 are hereby incorporated by reference.

69. The conduct described herein constitutes breaches of the contractual obligations and agreements contained in the Pittsburg Franchise Agreement and the Concord Franchise Agreement.

70. These breaches constitute grounds for terminating the Pittsburg Franchise Agreement and the Concord Franchise Agreement.

71. As a direct and proximate result of these breaches, Baskin-Robbins has suffered and is continuing to suffer irreparable injury and has incurred substantial losses, fees, and expenses in excess of $75,000.00.

## COUNT II

## Trademark Infringement

### (Against Defendants Sukpran Gill and Gurmeet Gill)

72. The allegations of paragraphs 1 through 71 are hereby incorporated by reference.

73. Defendants Sukpran Gill and Gurmeet Gill's use in commerce of the Baskin-Robbins trademarks and trade names outside the scope of the Pittsburg Franchise Agreement and the Concord Franchise Agreement and without the consent of Baskin-Robbins is likely to confuse or deceive the public into believing, contrary to fact, that Defendants Sukpran Gill and Gurmeet Gill's unauthorized activities are licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins. Such continued use of the Baskin-Robbins trademarks and trade names infringes Baskin-Robbins' exclusive rights in the Baskin-Robbins trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

74. As a result of Defendants Sukpran Gill and Gurmeet Gill's actions, Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III

## Unfair Competition

### (Against Defendants Sukpran Gill and Gurmeet Gill)

75. The allegations of paragraphs 1 through 74 are hereby incorporated by reference.

76. Defendants Sukpran Gill and Gurmeet Gill's use in commerce of the Baskin-Robbins trademarks and trade names outside the scope of the Pittsburg Franchise Agreement and the Concord Franchise Agreement and without the consent of Baskin-Robbins is likely to cause confusion, or to cause mistake, or to

1 deceive as to the origin, sponsorship, or approval of their goods, services, or
2 commercial activities by another person.  Such unauthorized use of the Baskin-
3 Robbins trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. §
4 1125(a), and applicable state law.

5       77. As a result of Defendants Sukpran Gill and Gurmeet Gill's actions,
6 Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has
7 incurred and is continuing to incur monetary damage in an amount that has yet to
8 be determined.

## COUNT IV

### Trade Dress Infringement

### (Against Defendants Sukpran Gill and Gurmeet Gill)

12       78. The allegations of paragraphs 1 through 77 are hereby incorporated by
13 reference.

14       79. Defendants Sukpran Gill and Gurmeet Gill's commercial use in
15 commerce of the Baskin-Robbins trademarks and trade names outside the scope of
16 the Pittsburg Franchise Agreement and the Concord Franchise Agreement and
17 without the consent of Baskin-Robbins causes dilution of the distinctive quality of
18 the Baskin-Robbins trademarks and trade names.  Such unauthorized use of the
19 Baskin-Robbins trademarks and trade names violates § 43 of the Lanham Act, 15
20 U.S.C. § 1125(c), and applicable state law.

21       80. As a result of Defendants Sukpran Gill and Gurmeet Gill's actions,
22 Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has
23 incurred and is continuing to incur monetary damage in an amount that has yet to
24 be determined.

25 //
26 //
27 //
28 //

# COUNT V

## Fraud

### (Against all Defendants)

81.  The allegations of paragraphs 1 through 80 are hereby incorporated by reference.

82.  As set forth above in Paragraphs 32-60, Defendants intentionally misrepresented or failed to disclose facts to Baskin-Robbins and others in an effort to open the Country Creamery store.

83.  In pursuit of this scheme, as set forth above in Paragraphs 32-60, Defendants made false statements of fact to Baskin-Robbins, including those related to the purchase of equipment for the Country Creamery store.

84.  Defendants made these statements with knowledge of their falsity and with the intent that Baskin-Robbins would rely on them.

85.  Baskin-Robbins reasonably relied on the false statements made by Sukpran Gill.

86.  In further pursuit of this scheme, as set forth above in Paragraphs 32-60, Defendants concealed from Baskin-Robbins material facts relating to the Country Creamery store, including those facts relating to Sukpran Gill's active and substantial involvement in the establishment and operation of the business.

87.  Defendants had a duty to disclose such information to Baskin-Robbins.

88.  Defendants intentionally concealed these facts and actively concealed discovery of such facts with the intent of defrauding Baskin-Robbins.

89.  Baskin-Robbins was unaware of these facts and would not have taken actions, such as selling the equipment that was eventually installed at the Country Creamery store, if it had known of such facts.

90. As a result of Defendants' acts and omissions, Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Baskin-Robbins prays that this Court:

   a. Enter a declaratory judgment order stating that the conduct of Defendants violated the terms of the Franchise Agreements and constitutes grounds for terminating the Pittsburg Franchise Agreement and Concord Franchise Agreement;

   a. Enter a judgment in favor of Plaintiffs for the damages they have incurred as a result of the breaches of the Pittsburg Franchise Agreement and Concord Franchise Agreement by Defendants;

   b. Enter an injunctive order ratifying and enforcing the termination of the Pittsburg Franchise Agreement and Concord Franchise Agreement as of the effective date of the Notice of Termination, or as otherwise provided by applicable law;

   c. Enjoin Defendants and all those acting in concert with them from infringing upon Baskin-Robbins' trademarks, trade dress and trade names and from otherwise engaging in unfair competition with Baskin-Robbins;

   d. Enter an injunctive order directing Defendants to comply with all post-termination obligations under any contract with Baskin-Robbins, including, but not limited to, the Pittsburg Franchise Agreement and Concord Franchise Agreement, Leases, and Lease Riders including, but not limited to, their operation of the Country Creamery store;

   e. Award Baskin-Robbins judgment against Defendants for the damages they have sustained and the profits Defendants have derived as a result of their actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

1    f.    Award Baskin-Robbins prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

     g.    Award Baskin-Robbins such exemplary or punitive damages as are deemed appropriate because of the willful, intentional, and malicious nature of the conduct of Defendants;

     h.    Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

     i.    Award Plaintiffs such other relief as this Court may deem just and proper.

DATED:   July 19, 2007              SEYFARTH SHAW LLP

                                    By   /s/ Maria Rodriguez

                                    Maria C. Rodriguez
                                    Attorneys for Plaintiffs

# PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss
COUNTY OF LOS ANGELES )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Seyfarth Shaw LLP, 2029 Century Park East, Suite 3300, Los Angeles, California 90067-3063. On July 19, 2007, I served the within documents:

**FIRST AMENDED COMPLAINT**

☐ I sent such document from facsimile machine (310) 201-5219 on _____, 2007. I certify that said transmission was completed and that all pages were received and that a report was generated by facsimile machine (310) 201-5219 which confirms said transmission and receipt. I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at Los Angeles, California, addressed as set forth below.

☐ by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

Jayne T. Kaplan
Attorney at Law
1112 Fair Oaks Avenue
South Pasadena, CA 91030
Tel: 415-433-1700
Fax: 415-433-1700

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than on day after the date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court whose direction the service was made; executed on July 19, 2007, at Los Angeles, California.

/s/ Maritza Estrada

/54578-5