HARMEET K DHILLON, ESQ. (SBN:207873)
DAVID LIHWEI LIN, ESQ. (SBN:243448)
DHILLON & SMITH
214 Grant Avenue, Suite 400
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Defendants
Sukpran and Gurmeet Gill

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **BASKIN-ROBBINS FRANCHISED SHOPS LLC and BR IP HOLDER LLC,**<br><br>     **Plaintiffs,**<br>                **v.**<br><br>**SUKPRAN GILL and GURMEET GILL**<br><br>     **Defendants.** | **Case No. C07-02441 PJH**<br><br>**NOTICE of MOTION and MEMORANDUM of POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) & 9(b)**<br><br>**Date:    November 7, 2007**<br>**Time:    9:00 a.m.** |

Dhillon & Smith
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Contents**

NOTICE OF MOTION ........................................................................................ 1

RELIEF SOUGHT ............................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.     INTRODUCTION ................................................................................... 1

II.    LEGAL STANDARD .............................................................................. 2

       A.    Failure to State a Claim Upon Which Relief May Be Granted .............. 2

       B.    Failure to Plead Fraud With Particularity ................................... 3

III.   FACTUAL BACKGROUND .................................................................... 3

       A.    Relationships Among the Parties ............................................... 4

       B.    The Covenants Not to Compete ................................................. 4

       C.    The Country Creamery Ice Cream Store .................................... 5

       D.    Termination Notice and Continued Operation .......................... 6

       E.    History of the Litigation ........................................................... 7

IV.    ARGUMENT ........................................................................................... 7

       A.    California Law Clearly Governs This Dispute ........................... 8

       B.    Plaintiffs' Breach of Contract Claims Are Barred By California Law ............... 10

             1.    BR IP Holder Has No Contract with the Gills ........................... 10

             2.    Covenants Not to Compete Are Void Under California Law ................... 11

                   a.    Franchise Agreements Fall Within § 16600's Scope .................... 11

                   b.    Baskin-Robbins' Restrictions Are Unlimited In Scope ............... 12

                   c.    Void Anti-Competitive Covenants Cannot Be "Saved" by
                         Reformation ................................................................. 14

             3.    Even Assuming Breach, the CFRA Requires Notice and an
                   Opportunity to Cure ......................................................... 14

                   a.    The CFRA Applies to the Franchise Agreements ...................... 15

                   b.    The Alleged Conduct Does Not Fall Into the Statutory
                         Exceptions to the CFRA's Notice and Cure Requirements ......... 16

             4.    The Concord Agreement Does Not Permit Termination Without
                   Cure for Alleged Competition ............................................ 17

       D.    Plaintiffs' Trademark Allegations Do Not State a Claim ............... 17

**Dhillon & Smith**
214 Grant Ave., Suite 300
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1    1. It is Clear That Absent a Valid Termination, the Gills are Entitled to Use the Trademarks and Trade Dress at Issue ...................................... 18

2    2. The SAC Does Not State a Claim for Trade Dress Infringement ............ 18

3  E. The SAC Fails to State a Claim for Fraud under Fed.R.Civ.P. 9(b) or 12(b)(6)................................................................................................................ 20

4    1. The SAC Does Not Allege "Who, What, When and Where" ................. 20

5    2. Plaintiffs' Complaints Regarding the Dipping Cabinets are Immaterial ...................................................................................................... 21

6    3. BR IP Holder Has No Relationship With the Gills ................................... 22

7  F. This Court Should Dismiss the SAC Without Leave To Amend......................... 22

**Dhillon & Smith**
214 Grant Ave., Suite 300
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1

**Table of Authorities**

2

**Federal and State Cases**

3    *Azadpour v. Sun Microsystems, Inc.,* 2007 WL 2141079 (N.D.Cal. July 23, 2007)...................... 23

4    *Balisteri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988).............................................. 2

5    *Biosite, Inc. v. XOMA Ltd.*, 168 F.Supp.2d 1161 (N.D.Ca. 2001) ........................................... 11, 20

6    *Bosley Medical Group v. Abramson*, 161 Cal.App.3d 284, 288 (1984) ....................................... 12

7    *Boughton v. Socony Mobil Oil Co.*, 231 Cal.App.2d 188, 192 (1964)........................................... 13

8    *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994) ....................................................................... 3

9    *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir. 1994) ...................................................................... 3

10   *Caldwell v. Caldwell*, 2006 WL 618511 *3 (N.D.Cal. March 13, 2006)........................................ 3

11   *Cervantes v. City of San Diego,* 5 F.3d 1273, 1274 (9th Cir.1993) ................................................ 3

12   *Clicks Billiards, Inc. v. Sixshooters Inc.,* 251 F.3d 1252, 1257 (9th Cir.2001) ........................... 18

13   *Davis v. Advanced Care Technologies, Inc.*, 2007 WL 2288398 (E.D.Ca. Aug. 8, 2007) ............. 10

14   *Dayton Time Lock Service, Inc. v. The Silent Watchman Corp.,*

15   52 Cal.App.3d 1 (2d Dist. 1975) ................................................................................................. 13

16   *Dreamwerks Prod. Group, Inc. v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir.1998) ............. 19, 20

17   *Foley v. Bates*, 2007 WL 1430096, at *11 (N.D.Cal. 2007) ......................................................... 21

18   *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 20 Cal.App.3d 668, 673 (1971)................. 9

19   *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81, 120 S.Ct.

20   693, 145 L.Ed.2d 610 (2000) ..................................................................................................... 10

21   *Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir.2002) ............................................... 3

22   *General Accident Ins. Co. v. Namesnik,* 790 F.2d 1397, 1398 (9th Cir. 1986)................................. 9

23   *Hormel Foods Corp. v. Jim Henson Productions, Inc.,* 73 F.3d 497, 507 (2d Cir.1996) .............. 19

24   *In re Pacific Gateway Exchange, Inc. Securities Litig.*, 169 F.Supp. 1160, 1164 (N.D.Ca. 2001) .. 3

25   *Int'l Business Machines Corp. v. Bajorek,* 191 F.3d 1033, 1042 (9th Cir. 1999)........................... 10

26

27

28

Dhillon & Smith
214 Grant Ave., Suite 200
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1   *International Jensen v. Metrosound U.S.A.,* 4 F.3d 819, 825 (9th Cir.1993) ........................ 18, 19

2   *Ismart Intern. Ltd. v. I-Docsecure, LLC*, 2005 WL 588607 (N.D.Cal. Feb. 14, 2005) ................ 21

3   *Kolani v. Gluska,* 64 Cal.App.4th 402, 407 (2d Dist. 1998) ........................................... 14

4   *LaFortune v. Ebie,* 26 Cal. App.3d 72 (2d Dist. 1972) .............................................. 12

5   *Latona v. Aetna U.S. Healthcare Inc.* 82 F.Supp.1089, 1096 (C.D.Ca. 1999) ........................ 12

6   *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001) ...................................... 3

7   *Lujan v. Defenders of Wildlife,*

8   504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ................................. 11

9   *Metro Traffic Control, Inc. v. Shadow Traffic Network,*

10  22 Cal.App.4th 853, 860-861 (2d Dist. 1994) .................................................. 12

11  *Moore v. Brewster,* 96 F.3d 1240, 1245 (9th Cir. 1996) ........................................... 20

12  *Muggill v. Reuben H. Donnelly Corp.*, 62 Ca.2d 239, 242 (1965) ................................... 12

13  *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001) .............................................. 2

14  *Panavision Int'l, L.P. v. Toeppen,* 945 F.Supp. 1296, 1302 & 1304 (C.D.Cal.1996) .................. 19

15  *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984) ........................ 2

16  *Robinson v. Jardine Ins. Brokers Int'l Ltd.*, 856 F.Supp. 554 (N.D.Ca. 1994) ..................... 9

17  *Rosenthal v. Fonda*, 862 F.2d 1398, 1402 (9th Cir. 1988) ......................................... 10

18  *Schmier v. U.S.Ct. of App. for Ninth Cir.,* 279 F.3d 817, 820-21 (9th Cir.2002) .................. 11

19  *Scott v. Snelling and Snelling, Inc,* 732 F.Supp.1034, 1039 (N.D.Ca. 1990) ............... 9, 11, 12, 14

20  *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir.2000) ....................................... 2

21  *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.,* 88 F.3d 780, 782 (9th Cir.1996) ....... 2

22  *Standard Oil Co. v. United States*, 337 U.S. 293, 314 (1949) ..................................... 13

23  *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) ..................................... 3

24  *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir.2002) ....................... 2

25  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097 (9th Cir. 2003) .................................. 3, 20

26

27

28

*Baskin-Robbins Franchised Shops et al. v. Gill et al., C07-02441*     **Page v**     **Notice of Motion and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)**

1

2

**Statutes**

3

15 U.S.C. § 1114 ........................................................................................................................ 17

4

15 U.S.C. § 1125(a) ................................................................................................................... 17

5

15 U.S.C. § 1125(c) ....................................................................................................... 17, 18, 19

6

15 U.S.C. § 1127 ........................................................................................................................ 19

7

Cal. Bus. & Prof. Code § 16600 ........................................................................................ passim

8

Cal. Bus. & Prof. Code § 16601 .......................................................................................... 12, 14

9

Cal. Bus. & Prof. Code § 20001 *et seq.* ............................................................... 9, 10, 13, 15

10

Cal. Bus. & Prof. Code § 20021(a)-(k) ...................................................................................... 16

11

Cal. Bus. & Prof. Code § 20025 ................................................................................................. 16

12

Cal. Bus. & Prof.Code §§ 20010, 20020 ................................................................................... 16

13

**Rules**

14

Civil L.R. 7-2(b)(3) ...................................................................................................................... 1

15

Fed. R. Civ. P. 12(b)(1) ........................................................................................................ 1, 17

16

Fed.R.Civ.P. 12(b)(6) .......................................................................................................... 2, 3, 22

17

Fed.R.Civ.P. 9(b) ............................................................................................................... passim

18

19

20

21

22

23

24

25

26

27

28

**Dhillon & Smith**
214 Grant Ave., Suite 300
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

## NOTICE OF MOTION

**PLEASE TAKE NOTICE THAT,** on November 7, 2007 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3, 17th Floor, San Francisco Federal Building, 450 Golden Gate Avenue, San Francisco, California, Defendants Sukpran "John" Gill and Gurmeet Gill (collectively, "Defendants" or the "Gills") will move this Court to dismiss the Second Amended Complaint ("SAC") filed by Baskin-Robbins Franchised Shops LLC ("Baskin-Robbins") and BR IP Holder LLC ("BR IP Holder") (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that Plaintiffs have failed to state a claim for relief under any of the five counts; and that Plaintiffs have failed to plead fraud with particularity as required by Fed.R.Civ.P. 9(b).

## RELIEF SOUGHT

Pursuant to Civil L.R. 7-2(b)(3), Defendants request that the Court dismiss the SAC in its entirety, with prejudice. In the alternative, Defendants ask that the Court dismiss those claims that the Court finds fail to state a claim, including partially dismissing the claims as to one or the other of the two Plaintiffs where that Plaintiff lacks standing to sue.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Fundamentally, this case presents a contract dispute between Baskin-Robbins and two of its franchisees – the Gills – concerning whether or not Baskin-Robbins was entitled to peremptorily terminate the Gills' franchise agreements with Baskin-Robbins for stores in Contra Costa County. Baskin-Robbins alleges that it was entitled to terminate the two long-standing franchise agreements claiming that John Gill breached covenants not to compete contained in the franchise agreements through his alleged involvement with an ice cream store, the Country Creamery, in Napa County.  However the covenants not to compete that Gill is alleged to have violated are void, as contrary to California's strong public policy in favor of open competition. Moreover, Baskin-Robbins is not entitled, under California law, to terminate agreements with its

---

*Baskin-Robbins Franchised Shops et al. v. Gill et al., C07-02441*        **Page 1**        **Notice of Motion and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)**

1  franchisees under these circumstances without notice and an opportunity to cure. In addition,

2  Plaintiffs fail to allege any contractual relationship between Plaintiff BR IP Holder and the Gills,

3  and therefore cannot state a claim for breach of contract as to BR IP Holder.

4    The three Lanham Act counts fail to state a claim for trademark or trade dress infringement

5  or unfair competition because the Gills are licensed under the two franchise agreements to use all

6  of the trademarks and trade dress at issue. If the franchise agreements remain in effect as a matter

7  of law, then the Gills are within their rights to continue using Baskin-Robbins trademarks and

8  trade dress, and therefore Baskin-Robbins fails to state any claim under the Lanham Act. As to the

9  fifth count, for fraud, Baskin-Robbins yet again has failed to state a claim for fraud in its third

10  complaint in this case, failing either to allege fraud with particularity as required by Fed.R.Civ.P.

11  9(b), or to allege materiality as required by Fed.R.Civ.P. 12(b)(6), or to allege plaintiff BR IP

12  Holder's standing to sue for fraud.

13    ## II.    LEGAL STANDARD

14    ### A.    Failure to State a Claim Upon Which Relief May Be Granted

15    A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim.

16  *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). Because the focus of a 12(b)(6) motion is on

17  the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its

18  review to the face of the complaint. *See Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977,

19  980 (9th Cir.2002). Generally, dismissal is proper when the plaintiff has failed to assert a

20  cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory. *See*

21  *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.,* 88 F.3d 780, 782 (9th Cir.1996);

22  *Balisteri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988); *Robertson v. Dean Witter*

23  *Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984). In considering a 12(b)(6) motion, the Court

24  accepts the plaintiff's material allegations in the complaint as true and construes them in the light

25  most favorable to the plaintiff. *See Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir.2000).

26

27

28

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1    In considering a motion under 12(b)(6), a court generally may not consider any material

2    beyond the pleadings. *Cervantes v. City of San Diego,* 5 F.3d 1273, 1274 (9th Cir.1993); *Lee v.*

3    *City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001) (citing *Branch v. Tunnell,* 14 F.3d 449, 453

4    (9th Cir.1994), *overruled on other grounds, Galbraith v. County of Santa Clara,* 307 F.3d 1119

5    (9th Cir.2002)). However, "documents whose contents are alleged in a complaint and whose

6    authenticity no party questions, but which are not physically attached to the pleading, may be

7    considered." *Branch,* 14 F.3d at 454. "The court may look outside the complaint where the outside

8    document has been referenced by, or relied on in the complaint itself." *Caldwell v. Caldwell*, 2006

9    WL 618511 *3 (N.D.Cal. March 13, 2006) (citing *United States v. Ritchie,* 342 F.3d 903, 908 (9th

10   Cir. 2003).

11   **B.    Failure to Plead Fraud With Particularity**

12   "When … an entire claim in a complaint is grounded in fraud and its allegations fail to

13   satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the

14   complaint or claim." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097 (9th Cir. 2003). A motion to

15   dismiss pursuant to Fed.R.Civ.P. 9(b) is the functional equivalent of a motion to dismiss under

16   Rule 12(b)(6). *Id.* at 1107 *(citing authorities).*

17   **III.    FACTUAL BACKGROUND**

18   For purposes of this motion only,[1] the Gills accept all factual allegations in the SAC as

19   being true.

20

21   [1]    The Gills separately have filed a motion pursuant to Fed.R.Civ.P. 12(b)(1) challenging the

22   Court's subject matter jurisdiction over the SAC. These motions were filed separately because the

23   Gills have submitted additional evidence in support of the Rule 12(b)(1) motion, which is

inappropriate for consideration here. The only evidence submitted in support of this motion

24   pursuant to Rules 12(b)6) and 9(b) are the two franchise agreements referenced in the complaint

and attached to the Dhillon Decl. as Exhibits 1 and 2, and the Notice of Default and Termination

25   sent by Baskin-Robbins to Defendants, attached to the Dhillon Decl. as Exhibit 3. "If a plaintiff

fails to attach to the complaint the documents on which it is based, defendant may attach to a

26   12(b)(6) motion the documents referred to in the complaint to show that they do not support

plaintiff's claim." *In re Pacific Gateway Exchange, Inc. Securities Litig.*, 169 F.Supp. 1160, 1164

27   (N.D.Ca. 2001) (*citing Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir. 1994).

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

## A.    Relationships Among the Parties

Plaintiff Baskin-Robbins USA Co. is the franchisor of the Baskin-Robbins stores and licenses franchisees to use the trademarks, trade names and service marks associated with the Baskin-Robbins brand. SAC, ¶ 1. Plaintiff BR IP Holder owns the trademarks, service mark and trade name "Baskin-Robbins" and related marks and has licensed the exclusive right to use those marks to Baskin-Robbins. SAC, ¶ 2. Baskin-Robbins entered into two franchise agreements relevant here: one with John and Gurmeet Gill for the operation of a Baskin-Robbins ice cream store in Pittsburg, California dated October 26, 1996 ("Pittsburg Agreement"). SAC, ¶ 3. Baskin-Robbins also entered into a franchise agreement with John Gill for the operation of a Baskin-Robbins ice cream store in Concord, California dated April 22, 2004 ("Concord Agreement"). Because both franchise agreements are extensively quoted in the SAC and their contents do not appear to be disputed, they are attached to the accompanying Declaration of Harmeet K. Dhillon, Esq. as Exhibits 1 and 2, respectively, and are referenced in the argument below.

Plaintiff BR IP Holder is not alleged in the SAC to have a contract with either defendant, nor is alleged to have had any contact with them or acted in reliance upon either of their statements or actions.

## B.    The Covenants Not to Compete

Both the franchise agreements contain broad covenants not to compete during and following the terms of the franchise agreements. SAC, ¶ 18. Specifically, the Pittsburg Franchise Agreement's ¶ 15.2.1 provides that a franchisor shall not "divert or attempt to divert any business or customer of the [store] to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks or the System." SAC, ¶ 19(b); Dhillon Decl., Ex. 1, p. 9.  The Pittsburg Agreement's ¶ 15.2.3 provides that franchisees shall not "own, maintain, operate, engage in, or have any interest in any business which is the same or similar to the Retail Unit. Same or similar shall mean more than five percent (5%) of the gross revenue is derived from the sale of frozen dairy desserts." SAC, ¶ 19(c); Dhillon Decl., Ex. 1, p. 9.  The Concord Agreement's ¶ 8.0.3

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1  similarly provides that franchisees shall not "own, maintain, engage in, be employed by, or have

2  any interest in any other business which sells or offers to sell the same or substantially similar

3  products to the type FRANCHISOR requires to be offered by FRANCHISEE at the Unit…" SAC,

4  ¶ 24(c); Dhillon Decl., Ex. 2, p. 11.

5      **C.    The Country Creamery Ice Cream Store**

6      Plaintiffs allege that starting in March, 2007, John Gill "opened and operated" an ice cream

7  store in American Canyon, Napa County, California, by the name of "Country Creamery." SAC,

8  ¶¶ 31, 34. Specifically, the SAC alleges that John Gill negotiated the terms of a lease for the store,

9  identified himself as its owner, applied for a business license under the name of his father, Isher

10  Gill, contacted city officials on the store's behalf, applied for a permit to operate the business in

11  his father's name, assisted in getting the store ready for business, and was involved in hiring

12  employees on behalf of the business. SAC, ¶¶ 32-42. Plaintiffs also allege that John Gill purchased

13  ice cream dipping cabinets and an ice machine from defunct Baskin-Robbins stores, that he

14  subsequently caused those cabinets to be installed in the Country Creamery store, and that Baskin-

15  Robbins would not have "conducted" the sale to him had they known that they would be installed

16  in the Country Creamery. SAC, ¶¶ 43-51.

17      The Country Creamery offers ice cream for sale to the public at $1 a scoop, a lower price

18  than the ice cream offered by Baskin-Robbins franchisees. SAC, ¶ 55. Plaintiffs claim that the

19  opening of the Country Creamery store has caused sales at a Baskin-Robbins located one mile

20  away in Vallejo, California, to decline from April, 2007 through June, 2007, compared to prior

21  years' sales. SAC, ¶ 57, causing a decline in Baskin-Robbins' receipt of royalties and

22  contributions to an advertising fund.

23      There is no allegation in the SAC that the Country Creamery is selling Baskin-Robbins ice

24  cream, or that the Gills are selling any ice cream other than Baskin-Robbins ice cream at the

25  Pittsburg and Concord franchise locations, or anywhere else.

26

27

28  *Baskin-Robbins Franchised Shops et*          **Page 5**          **Notice of Motion and Motion to Dismiss**
   *al. v. Gill et al., C07-02441*                                 **Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)**

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

### D.    Termination Notice and Continued Operation

Baskin-Robbins alleges that as a result of John Gill's alleged involvement in the Country Creamery store, both John and Gurmeet Gill violated covenants not to compete in the two franchise agreements, and provided good cause for the termination of the two agreements. SAC, ¶ ¶ 61-62. Baskin-Robbins sent a Notice of Default and Termination dated April 30, 2007 ("Termination Notice") to the Gills. SAC, ¶ ¶ 64-65. Although not excerpted in the SAC, the document is characterized and referenced therein; the allegations of the SAC rely substantially upon its contents; and presumably Baskin-Robbins does not question the relevance, admissibility, or authenticity as the document originated from its counsel in this litigation.  Accordingly, it is attached to the Dhillon Declaration as Exhibit 3.

After setting forth the allegations about John Gill's involvement in the Country Creamery in similar terms to the allegations in the SAC, the Termination Notice informs the Gills:

> Your actions constitute a default under Section 9 of the Franchise Agreement for PC 340372 and Section 16 of the Franchise Agreement for PC 361197. These acts are defaults under the Franchise Agreements, constitute fraud, and, as a matter of law, cannot be cured and constitute grounds for terminating the Franchise Agreements.

Dhillon Decl., Ex. 3, p. 2. The Termination Notice demands that the Gills take certain actions:

> Baskin-Robbins demands that you take such actions as are necessary to comply with your post-termination obligations as set forth in the Franchise Agreements, including, but not limited to, 1) ceasing to use any methods associated with Baskin-Robbins; 2) ceasing to use any or all of the proprietary marks of Baskin-Robbins; 3) returning all manuals to Baskin-Robbins and complying with the post-termination obligations set forth in the Franchise Agreements; and 4) ceasing your involvement in and ownership of the Country Creamery store.

Dhillon Decl., Ex. 3, p. 2; SAC, ¶ 65.

The Termination Notice makes numerous references to "applicable law" which affect the substance of the notice:

- The Gills' alleged defaults "*as a matter of law*, cannot be cured."

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

- The franchise agreements are either terminated without further notice effective upon receipt, or "as provided by *applicable law*."

- "Alternatively, if it should be determined *as a matter of law* that your defaults are curable, then Baskin-Robbins hereby gives you thirty (30) days from the receipt of this Notice in which to do those acts which you contend constitute a "cure" of the defaults under the Franchise Agreements."

- "If, *as a matter of law*, a longer cure period is required, then that period is applicable to this notice."

- If Baskin-Robbins submits the matter to a court to determine it, and "*[i]f it should be determined that there is no good cause for termination* of the Franchise Agreements then Baskin-Robbins will consider this Notice to be void."

Dhillon Decl., Ex. 3, pp. 2-3 (all emphases added).

The Gills have continued to operate the Pittsburg and Concord Baskin-Robbins ice cream stores. SAC, ¶ 66.

### E.    History of the Litigation

Plaintiffs filed the original Complaint in this matter on May 7, 2007 against John and Gurmeet Gill asserting four claims: breach of contract, and violations of the Lanham Act's trademark, trade dress and unfair competition provisions, each accompanied by "and applicable state law." Plaintiffs filed a motion for a Preliminary Injunction on June 12, 2007. Plaintiffs withdrew that motion on July 19, 2007. Plaintiffs filed a First Amended Complaint on July 19, 2007, 2007, adding a fraud claim to the previous claims and naming both Gurmeet Gill and John Gill's father, Isher Gill, as defendants in the fraud count. By stipulation, Plaintiffs filed the Second Amended Complaint on September 4, 2007, dismissing Isher Gill from the lawsuit, dismissing Gurmeet Gill as a defendant in the fraud count, and deleting all references to "applicable state law."

## IV.    ARGUMENT

This is a state law breach of contract dispute thinly disguised as a Lanham Act federal trademark case with pendent state law claims. The Gills concede that Baskin-Robbins' trademarks and related trade dress are valuable and well-recognized, and that the Gills are continuing to use

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

them in connection with the sale of Baskin-Robbins ice cream. The central issue in this case is whether or not the Gills are using the Baskin-Robbins trademarks as permitted by the Pittsburg and Concord franchise agreements, or whether those agreements were effectively terminated. Contrary to Plaintiffs' assertions in their withdrawn motion for a preliminary injunction, California law (not Massachusetts law) governs this dispute, and according to well-settled law California choice-of-law principles must be applied by this court.

Assuming *arguendo* that John Gill did, in fact, participate in some way in the opening of the Country Creamery store licensed to his father (SAC, ¶ 60), the question is whether or not these actions are barred by *valid* and enforceable covenants not to compete in the two franchise agreements. Moreover, California' strong public policy against agreements in restraint of trade dictates that any purported termination of the Gills' contract rights under the two franchise agreements based upon invalid covenants not to compete, are void.  The California Franchise Relations Act governs all franchisor/franchisee relations within this state, and it does not permit peremptory termination of a franchisee without notice and an opportunity to cure in situations such as those alleged in the SAC.  Plaintiff BR IP Holder is not alleged to have any contractual relationship with either of the Gills, is not alleged to have had any contact with them whatsoever, and therefore does not have standing to sue under the breach of contract or fraud claims. Similarly, BR IP Holder has no alleged relationship with the Gills, and therefore cannot state against them for fraud.  The Complaint does not allege fraud with the requisite particularity and therefore is subject to dismissal pursuant to Fed.R.Civ.P. 9(b).

### A.    California Law Clearly Governs This Dispute

As a threshold matter, and given Plaintiffs' repeated references to "applicable law" and in their original and first amended complaint, to "state law," this Court must determine which state's laws apply to the breach of contract and fraud claims, and to the effectiveness of the Termination Notice, which in turn determines whether or not Plaintiffs have stated a claim for violations of the Lanham Act. In their motion for a preliminary injunction (which has been voluntarily withdrawn), Plaintiffs argue that choice-of-law provisions in the two franchise agreements suggest the

Dhillon & Smith
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

application of Massachusetts law.  Motion for a Preliminary Injunction, p. 16, n.1[2]. This assertion

defies the law of federal diversity jurisdiction, California law governing the validity of anti-

competitive agreements (Cal. Bus. & Prof. Code § 16600) and specific provisions of California

statutory law expressly applying to the franchisor/franchisee relationship, the California Franchise

Relations Act ("CFRA"), Cal. Bus. & Prof. Code § 20001 *et seq.*

As a federal district court sitting in diversity jurisdiction over state law claims, this Court

must first determine which law to apply to the substantive legal issues raised. *Scott v. Snelling and*

*Snelling, Inc,* 732 F.Supp.1034, 1039 (N.D.Ca. 1990). "This choice of law question is normally

determined by reference to the choice of law rules of the state in which the district court sits." *Id*.,

*citing General Accident Ins. Co. v. Namesnik*, 790 F.2d 1397, 1398 (9th Cir. 1986). In *Snelling*, a

case interpreting the applicability of a covenant not to compete in a franchise context, this Court

applied California law, reasoning that while California choice of law generally gives weight to a

contract's choice of law provisions, "California law will not give force to a choice of law where

the contract contains a provision which violates 'a strong California public policy.'" *Id*. at 1039,

*quoting Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 20 Cal.App.3d 668, 673 (1971);

*see also Robinson v. Jardine Ins. Brokers Int'l Ltd.*, 856 F.Supp. 554 (N.D.Ca. 1994) (Cal. Bus. &

Prof. Code § 16600 "has been found to represent a strong public policy of the state"). As the

*Snelling* court explained:

> California Bus. & Prof. Code § 16600, stating that "every contract by which
> anyone is restrained from engaging in a lawful profession, trade, or business of any
> kind is to that extent void," has been held by the California courts to represent a
> strong policy which would override the choice of law provision in the contract at
> least with regard to the restrictive covenant.

*Internal citations omitted.* The *Snelling* court went on to apply Cal. Bus. & Prof. Code §

16600 to strike down a restrictive covenant in a franchise agreement.

---

[2]    The Concord Agreement specifies at ¶ 17 that its interpretation shall be governed by
Massachusetts law. Dhillon Decl., Ex. 2, p.19. The original Pittsburg Agreement specified that it
would be governed by the law of Baskin-Robbins' principal place of business, which was
California at the time the parties initially entered into the Agreement. Dhillon Decl., Ex. 1, ¶ 25.1.

Dhillon & Smith
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1    Similarly, in *Davis v. Advanced Care Technologies, Inc.*, 2007 WL 2288398 (E.D.Ca. Aug.

2    8, 2007), the court applied California law in a noncompetition case presenting a conflict of law

3    question, determining that where the defendant whose alleged competition was being restrained

4    lived and worked in California, "California has a 'materially greater interest' in the outcome of this

5    case" than Connecticut, particularly where Connecticut law conflicted with California law

6    concerning the enforceability of a restrictive covenant. *Id.* at *6. *See also Rosenthal v. Fonda*, 862

7    F.2d 1398, 1402 (9th Cir. 1988) ("as a forum, a California court will conclude that a conflict is

8    'false' and apply its own law unless the application of the foreign law will 'significantly advance

9    the interests of the foreign state'" (internal citations omitted)); *Int'l Business Machines Corp. v.*

10   *Bajorek*, 191 F.3d 1033, 1042 (9th Cir. 1999) (California has a considerable interest in protecting its

11   citizens from oppressive non-competition agreements).

12   It is clear, both with respect to California's strong public policy concerning anti-competitive

13   covenants, as well as with respect to California's statutory scheme strictly governing the

14   circumstances under which a franchisor may prematurely terminate a franchise agreement – which

15   expressly voids any franchise agreement that purports to waive the  franchisee, *see* Cal. Bus. &

16   Prof. Code § 20001 *et seq.* – that California law must apply to the breach of contract and fraud

17   claims here.

18   **B.    Plaintiffs' Breach of Contract Claims Are Barred By California Law**

19   **1.    BR IP Holder Has No Contract with the Gills**

20   Article III of the United States Constitution's "case or controversy" requirement mandates

21   that a plaintiff must prove that "(1) it has suffered an 'injury in fact' that is (a) concrete and

22   particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

23   traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

24   speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v.*

25   *Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)

26

27

28   *Baskin-Robbins Franchised Shops et*     **Page 10**     **Notice of Motion and Motion to Dismiss**
*al. v. Gill et al., C07-02441*                         **Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)**

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1    (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351

2    (1992); *Schmier v. U.S.Ct. of App. for Ninth Cir.,* 279 F.3d 817, 820-21 (9th Cir. 2002).

3        At the outset of the SAC, before the first numbered paragraph, Plaintiffs allege that they

4    *both* issued the Gills the Termination Notice (even though the Termination Notice itself only

5    claims to be on behalf of Baskin-Robbins Franchised Shops; *see* Dhillon Decl., Ex. 3, p. 1). The

6    SAC also specifies at the outset that both Plaintiffs will thereafter in the SAC collectively be

7    referred to as "Baskin-Robbins." SAC, pp. 1-2. The SAC also defines the term "Baskin-Robbins"

8    to be plaintiff Baskin-Robbins Franchised Shops LLC. SAC, ¶ 1. Throughout the SAC, Plaintiffs

9    then fail to differentiate whether their claims are as to one or the other plaintiff or as to both

10   "Baskin-Robbins" as collectively defined on p. 2 of the SAC.  Where, as here, one of two related

11   corporate entities has alleged the bases for standing to sue, but where it is unclear whether one of

12   the two can assert certain claims, the plaintiff must "amend the complaint to clarify which plaintiff

13   is bringing which claim." *Biosite, Inc. v. XOMA Ltd.*, 168 F.Supp.2d 1161 (N.D.Ca. 2001).

14       Plaintiff BR IP Holder is not alleged to have any contracts with the Gills. As such, it

15   cannot maintain a cause of action against either Defendant, as the existence of a valid contract is

16   an essential element of a claim for breach of contract.  The SAC cites no other theory of recovery

17   against the Defendants under contract law principles, other than breach of contract. SAC, ¶ ¶ 67-

18   70. BR IP Holder has alleged no contract-based injury in fact traceable to Defendants. Unless

19   Baskin-Robbins is asserting or conceding that BR IP Holder is an *alter ego* of Baskin-Robbins

20   Franchised Shops, LLC, Count I of the SAC must be dismissed as to Plaintiff BR IP Holder.

21            **2.       Covenants Not to Compete Are Void Under California Law**

22               **a.       Franchise Agreements Fall Within § 16600's Scope**

23       The validity of restrictive covenants in a franchise agreement is a question of law. *Snelling,*

24   732 F.Supp. at 1038.  The relevant California law is Cal. Bus. & Prof. Code § 16600, which voids

25   "every contract by which anyone is restrained from engaging in a lawful profession, trade or

26   business." Exceptions to this rule pertain to very limited circumstances that do not apply here,

27

28

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1    such as the statutory exception concerning the sale of a business, Cal. Bus. & Prof. Code § 16601;

2    and a competitor's use of trade secrets. *Snelling*, 732 F.Supp. at 1043; *Metro Traffic Control, Inc.*

3    *v. Shadow Traffic Network,* 22 Cal.App.4[th] 853, 860-861 (2d Dist. 1994) (absent proof of a trade

4    secret, court would refuse to uphold restrictive covenant); *Latona v. Aetna U.S. Healthcare Inc.* 82

5    F.Supp.1089, 1096 (C.D.Ca. 1999). Neither exception is alleged in the SAC, nor do the facts

6    alleged support either narrow theory of exemption from the otherwise blanket prohibition in §

7    16600 on anti-competitive covenants.

8         California courts have interpreted franchise agreements that restrict competition to be

9    violations of both antitrust law and Cal. Bus. & Prof. Code § 16600. In *LaFortune v. Ebie,* 26 Cal.

10   App.3d 72 (2d Dist. 1972), the Court of Appeal considered whether a Chicken Delight franchisee

11   could restrain neighboring franchise holders from delivering chicken inside his territory, as the

12   franchise agreement provided. On appeal, the court, *sua sponte*, reversed the judgment of the trial

13   court upholding the restriction, holding that the franchise territory limitation in the food services

14   industry was an illegal vertical restraint of trade. *Id.* at 590. Nearly three decades later, this Court

15   in *Snelling,* citing *LaFortune,* held that "the California courts would apply § 16600 to a franchise

16   agreement containing a covenant restricting competition." *Snelling*, 732 F.Supp. at 1040. *Snelling*

17   went on to hold that California's public policy against covenants not to compete was so strong that

18   California courts would not apply a "rule of reason" to a restriction in a franchise agreement

19   violating the statute. *Id.* at 1042.

20        Nor will California courts give effect to partial restraints such as temporal or geographic

21   restrictions on competition. *Id.*, 732 F.Supp. at 1042-43. "The California courts have repeatedly

22   held that section 16600 should be interpreted as broadly as its language reads." *Id., citing Muggill*

23   *v. Reuben H. Donnelly Corp.*, 62 Ca.2d 239, 242 (1965); *Bosley Medical Group v. Abramson*, 161

24   Cal.App.3d 284, 288 (1984).

25              **b.        Baskin-Robbins' Restrictions Are Unlimited In Scope**

26        The one authority arguably enforcing an anticompetitive covenant in a franchise context is

27   the older decision of *Dayton Time Lock Service, Inc. v. The Silent Watchman Corp.,* 52

---

*Baskin-Robbins Franchised Shops et*        **Page 12**        Notice of Motion and Motion to Dismiss

28   *al. v. Gill et al., C07-02441*                            Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)

Cal.App.3d 1 (2d Dist. 1975), which is distinguishable on its facts and limited holding. In *Dayton Time Lock,* the court on appeal considered an anti-competitive covenant in a franchise agreement in both antitrust and Cal. Bus. & Prof. Code § 16600 contexts. The agreement contained both "in-term" and post-termination geographic restrictions on competition. The franchisor conceded that its post-termination covenants were unenforceable and void as a matter of law under § 16600, but asked the court to uphold the validity of the restrictive covenant prohibiting the franchisee from selling locks, devices or services in competition with the franchisor in the states of California, Oregon and Washington.

Beginning with the equivocal statement that "[e]xclusive dealing contracts are not necessarily invalid," the *Dayton* court further observed that such restrictions "are proscribed when it is probable that performance of the contract will foreclose competition in a substantial share of the affected line of commerce." *Id.*, citing *Standard Oil Co. v. United States*, 337 U.S. 293, 314 (1949). Finding that the franchisee had failed to develop material evidence on the anticompetitive effect of the covenant not to compete, the court upheld the trial court's determination that the restrictive covenant was not invalid as a matter of law. *Dayton*, 52 Cal.App.3d at 7. The court's holding does not refer to or rely upon Cal. Bus. & Prof. Code § 16600, which is at issue here. Perhaps more importantly, the *Dayton* case predates the passage of California's sweeping statutory scheme protecting the rights of franchisees against unfair and one-sided business practices by franchisors, the California Franchise Relations Act, which was passed into law in 1980. Cal. Bus. & Prof. Code § 20001 *et seq.*

It should also be noted that the in-term covenant not to compete upheld in *Dayton* on grounds other than § 16600 was restricted to the territory in which the franchisor had the *exclusive* right to operate during the term of the franchise agreement – California, Oregon and Washington. *See also Boughton v. Socony Mobil Oil Co.*, 231 Cal.App.2d 188, 192 (1964) (upholding a single restriction on a single piece of property). Here, by contrast, Baskin-Robbins purports to bar the Gills from operating any other ice cream business anywhere in the world during the terms of their franchise agreements. Dhillon Decl., Ex. 1, ¶ 15.2.3; Ex. 2, ¶ 8.0.3. Such a sweeping prohibition on

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1   competition, without the justification of either the sale of goodwill of a business (Cal. Bus. & Prof.

2   Code § 16601) or the existence of an otherwise legally cognizable trade secret, *see, e.g., Snelling*,

3   732 F.Supp. 1042, is unsupported by California law.

### c.    Void Anti-Competitive Covenants Cannot Be "Saved" by Reformation

Proponents of facially overbroad covenants not to compete often ask the courts to "save"

or "reform" their overreaching covenants by judicially editing or restricting them. Such a request

should be unavailing here – California courts routinely refuse to "blue-pencil" overbroad

covenants not to compete, choosing rather to strike them down altogether. *See, e.g., Kolani v.

Gluska*, 64 Cal.App.4[th] 402, 407 (2d Dist. 1998) (refusing to "save" an outright prohibition on

competition by reformation absent mistake; to do so would be to encourage parties to "insert

broad, facially illegal covenants not to compete" in their contracts).

Baskin-Robbins invokes protection of its Vallejo, California franchisee from competition

as a basis for its claims. SAC, ¶ ¶ 57-58. Protection of weaker businesses from robust new

competitors is manifestly *not* the job of courts applying California law. This Court should follow

its earlier example and interpret Cal. Bus. & Prof. Code § 16600 to mean what it says on its face:

"*Every* contract which contains a covenant restraining *any* person from engaging in a lawful

business is to that extent void, including franchise agreements." *Snelling*, 732 F.Supp. 1041

(emphasis in the original).

### 3.    Even Assuming Breach, the CFRA Requires Notice and an Opportunity to Cure

Assuming, *arguendo*, that notwithstanding California's law barring covenants limiting

competition, John Gill's alleged participation in the Country Creamery store is a colorable breach

of either franchise agreement, the California Franchise Relations Act requires that Baskin-Robbins

give the Gills notice of this alleged breach and an opportunity to cure it before filing suit for

breach of contract.

---

*Baskin-Robbins Franchised Shops et al. v. Gill et al., C07-02441*    **Page 14**    **Notice of Motion and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)**

Dhillon & Smith
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

### a.    The CFRA Applies to the Franchise Agreements

The California Franchise Relations Act ("CFRA"), Cal. Bus. & Prof.Code §20001 *et seq.*, provides in relevant part:

**§ 20001. Franchise**

As used in this chapter, "franchise" means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
(a) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and
(b) The operation of the franchisee's business pursuant to that plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and
(c) The franchisee is required to pay, directly or indirectly, a franchise fee.
(d) "Franchise" does not include any of the following: [ ... ]

**§ 20010. Waiver**

Any condition, stipulation or provision purporting to bind any person to waive compliance with any provision of this law is contrary to public policy and void.

**§ 20015. Domicile or operation in state**

The provisions of this chapter apply to any franchise where either the franchisee is domiciled in this state or the franchised business is or has been operated in this state.

**§ 20020. Grounds for termination prior to expiration of term; good cause**

Except as otherwise provided by this chapter, no franchisor may terminate a franchise prior to the expiration of its term, except for good cause. Good cause shall include, but not be limited to, the failure of the franchisee to comply with any lawful requirement of the franchise agreement after being given notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure the failure.

It is plain from the well-settled terms of the CFRA that the Gills are franchisees, who operate in California, and who are entitled to notice and an opportunity to cure any alleged defaults before the termination of the franchise agreements. Baskin-Robbins may not, as a matter of law, terminate a California franchisee without notice and a reasonable opportunity to cure. *See*

---

*Baskin-Robbins Franchised Shops et al. v. Gill et al., C07-02441*    **Page 15**    **Notice of Motion and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)**

Dhillon & Smith
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1    Cal. Bus. & Prof.Code §§ 20010, 20020. Baskin-Robbins fails to allege in the SAC that it gave the

2    Gills notice of the alleged default – John Gill's alleged competition by involvement in the Country

3    Creamery store. In fact, the Termination Notice, upon which BR relies in the SAC for its breach of

4    contract and Lanham Act claims, expressly states that the notice is with immediate effect and that

5    the alleged defaults *cannot be cured*. Dhillon Decl., Ex. 3, p. 2. Baskin-Robbins gave the Gills no

6    reasonable opportunity to cure the specified defaults – in fact, Plaintiffs initiated this litigation on

7    May 7, 2007, a scant seven days after sending the Termination Notice to the Gills. Dhillon Decl.,

8    Ex. 3. This trigger-happy action by Baskin-Robbins contradicts the clear statutory requirements of

9    the CFRA requiring notice *and* an opportunity to cure an alleged breach. Baskin-Robbins is

10   precluded as a matter of law from maintaining a cause of action against the Gills for breach

11   without first obeying the CFRA's requirements.

12               **b.       The Alleged Conduct Does Not Fall Into the Statutory
                            Exceptions to the CFRA's Notice and Cure**
13                          **Requirements**

14           Baskin-Robbins is expected to argue that John Gill's alleged competition by his

15   involvement with the Country Creamery falls within the CFRA's provision allowing immediate

16   franchise termination for certain egregious transgressions. The eleven grounds for immediate

17   termination under the CFRA including bankruptcy, repeated defaults, conviction of a felony, and

18   various other grounds not applicable here. Cal. Bus. & Prof. Code § 20021(a)-(k). Baskin-Robbins

19   may attempt to invoke § 20021(d), which provides grounds for immediate termination where the

20   franchisee "engages in conduct which reflects materially and unfavorably upon the operation and

21   reputation of the franchise business or system." However, Baskin-Robbins has not alleged that

22   either Defendant's actions have materially and unfavorably reflected upon the operation of the

23   Baskin-Robbins franchise system. Nor have Defendants been able to identify any authority for the

24   proposition that breach of a covenant not to compete in a franchise agreement (which, as argued

25   above, is null and void in any event under Cal. Bus. & Prof. Code § 16600) is a basis for

26   termination without cause under Cal. Bus. & Prof. Code § 20025. Accordingly, Baskin-Robbins

27

28

*Baskin-Robbins Franchised Shops et*          **Page 16**          **Notice of Motion and Motion to Dismiss**
*al. v. Gill et al., C07-02441*                                     **Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)**

fails to establish its right to immediate termination or to sue for breach without an opportunity to cure.

### 4. The Concord Agreement Does Not Permit Termination Without Cure for Alleged Competition

Even if premature termination were not barred by the CFRA and by California's bar on anti-competitive covenants, as argued above, the Concord Agreement itself requires a cure period for an alleged violation of a covenant not to compete. The Concord Agreement lists several types of defaults for which no cure period is available, such as bankruptcy, and conviction of a crime of moral turpitude, or falsification of financial data. Dhillon Decl., Ex. 2, ¶ 9.1.4. However, violation of the covenant not to compete with Baskin-Robbins, ¶ 8.0, is notably absent from the list of non-curable defaults. Accordingly, at least as to the Concord Agreement, Baskin-Robbins fails to state a claim for breach of contract.

### D. Plaintiffs' Trademark Allegations Do Not State a Claim

Plaintiffs allege that the Gills continued operation of the two Baskin-Robbins stores following receipt of the abrupt Termination Notice on May 2, 2007 states three federal causes of action: (1) trademark infringement pursuant to 15 U.S.C. § 1114; (2) unfair competition in violation of 15 U.S.C. § 1125(a); and (3) trade dress infringement in violation of 15 U.S.C. § 1125(c). (SAC, Count II, ¶¶ 71-79). In fact, however, the gravamen of the SAC is whether Sukpran and Gurmeet Gill breached the Pittsburg and Concord Franchise Agreements, which has absolutely nothing to do with the Lanham Act or any other trademark law, notwithstanding the SAC's recitation of the magic words "trademark" and "Lanham Act."[3]

Looking to the substance of the Lanham Act claims themselves, it is clear that Plaintiffs have attempted to "shoehorn" the facts alleged into the narrow constraints of federal trademark law, without success.

---

[3]     The question of whether Plaintiffs' three Lanham Act claims "arise under" federal law for purposes of this Court's subject matter jurisdiction under Article III of the Constitution is separately addressed in the accompanying Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1), and its arguments will not be repeated here.

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

### 1.    It is Clear That Absent a Valid Termination, the Gills are Entitled to Use the Trademarks and Trade Dress at Issue

There is no dispute that both Gills were permitted, pursuant to the Franchise Agreements, to make use of the Baskin-Robbins trademarks in the course of operating the Pittsburg and Concord Stores.  Dhillon Decl., Exs. 1 and 2.  The SAC does not allege that either of the Gills, at any point in time, exceeded the scope of the permitted use of the trademarks, other than the allegation that their rights to use those trademarks were terminated prematurely at Baskin-Robbins' instigation. (SAC, ¶ 65, 66).  Indeed, each of the three Lanham Act counts makes specific reference to both the Pittsburg and Concord Agreements. *See* SAC, ¶ 72; ¶ 75; and ¶ 78. These references necessarily acknowledge that the Gills had the right to use the trademarks and trade dress at issue here under the two franchise agreements, and reconfirm that the Lanham Act claims are predicated entirely upon the premature termination of those agreements. Absent an effective termination by Baskin-Robbins which complies with applicable state law governing both anticompetitive agreements and franchisor/franchisee relations, the Gills continue to have the right to use the trademarks pursuant to the two franchise agreements.  Accordingly, the SAC fails as a matter of law to state a claim under any federal trademark infringement or unfair competition theory.

### 2.    The SAC Does Not State a Claim for Trade Dress Infringement

The SAC's Count IV alleges that through their use of the Baskin-Robbins trademarks and trade names outside the scope of the two franchise agreements, the Gills are diluting the value of Baskin-Robbins' trade dress. SAC, ¶¶ 77-79. However, the allegations in the SAC fall short of meeting the statutory requirements to state a claim for trade dress infringement under 15 U.S.C. § 1125(c).

"Trade dress refers generally to the total image, design, and appearance of a product and 'may include features such as size, shape, color, color combinations, texture or graphics.'" *Clicks Billiards, Inc. v. Sixshooters Inc.,* 251 F.3d 1252, 1257 (9th Cir.2001) (quoting *International Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819, 822 (9th Cir.1993)). To sustain a claim for

---

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1 trade dress infringement, a plaintiff must prove: (1) that its claimed dress is nonfunctional; (2) that

2 its claimed dress serves a source-identifying role either because it is inherently distinctive or has

3 acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of

4 consumer confusion. *Id.*

5       For purposes of this motion only, the Gills concede that Baskin-Robbins' claimed trade

6 dress meets the first two criteria – nonfunctionality and secondary meaning. The claims of the

7 SAC fail, however, to establish a likelihood of consumer confusion under Ninth Circuit law. "A

8 likelihood of confusion exists when consumers are likely to assume that a product or service is

9 associated with a source other than its actual source because of similarities between the two

10 sources' marks or marketing techniques." *International Jensen v. Metrosound U.S.A.,* 4 F.3d 819,

11 825 (9th Cir.1993) (internal citations omitted); *see also Dreamwerks Prod. Group, Inc. v. SKG*

12 *Studio,* 142 F.3d 1127, 1129 (9th Cir.1998) ("The test for likelihood of confusion is whether a

13 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the

14 good or service bearing one of the marks.").

15       Dilution, the theory alleged in Count IV, is "the lessening of the capacity of a famous mark

16 to identify and distinguish goods or services, regardless of the presence or absence of (1)

17 competition between the owner of the famous mark and other parties, or (2) likelihood of

18 confusion, mistake, or deception." 15 U.S.C. § 1127. The goal of the courts in analyzing dilution

19 claims is "prevent[ing] deception of the public," and preserving the value of the trademark in

20 serving as a "unique symbol to consumers of the source of goods". *Panavision Int'l, L.P. v.*

21 *Toeppen,* 945 F.Supp. 1296, 1302 & 1304 (C.D.Cal.1996). "Tarnishment" as defined in the anti-

22 dilution statute, 15 U.S.C. § 1125(c), occurs when a superior mark is associated with products of

23 poor quality or is portrayed in an unwholesome manner. *Panavision,* 945 F.Supp. at 1304; *Hormel*

24 *Foods Corp. v. Jim Henson Productions, Inc.,* 73 F.3d 497, 507 (2d Cir.1996).

25       Plaintiffs' theory of dilution is unclear. There is no allegation that the Gills are using the

26 Baskin-Robbins franchises as fronts to sell counterfeit ice cream, or that they are using the Baskin-

27 Robbins name in some manner other than that expressly authorized by the two franchise

28

*Baskin-Robbins Franchised Shops et*     **Page 19**      **Notice of Motion and Motion to Dismiss**
*al. v. Gill et al., C07-02441*                        **Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)**

1   agreements. There is no colorable allegation that the Gills' use of the Baskin-Robbins name to sell

2   Baskin-Robbins ice cream as Baskin-Robbins franchisees (albeit, franchisees with a contract

3   dispute with the franchisor) tarnishes the trademarks or confuses the public as to the "origin of the

4   good or service bearing one of the marks." *Dreamwerks*, 142 F.3d at 1129. As alleged in the SAC,

5   the Gills are continuing to operate the two Baskin-Robbins stores – i.e., they are continuing to sell

6   Baskin-Robbins ice cream at Baskin-Robbins stores to Baskin-Robbins customers. The meaning

7   of "consumer confusion" and "dilution" under the Lanham Act as interpreted by the Ninth Circuit

8   does not stretch so far as to encompass Plaintiffs' claims in the SAC, and accordingly Count IV

9   must be dismissed.

10        **E.**     **The SAC Fails to State a Claim for Fraud under Fed.R.Civ.P. 9(b) or 12(b)(6)**

11

12        The SAC's Count V purports to state a claim against John Gill for fraud, presumably under

13   California state law, since no federal fraud statute is asserted. Fed.R.Civ.P. 9(b) requires plaintiffs

14   alleging fraud to state the circumstances with particularity. Plaintiffs must plead the "who, what,

15   when and where" of their fraud claims separately, in addition to any generalized factual

16   allegations contained elsewhere in the Complaint. *Biosite, Inc. v. XOMA Ltd.*, 168 F.Supp.2d

17   1161, 1168 (N.D.Cal. 2001). Where a complaint is lacking in those details, plaintiffs will be

18   required to amend it to comply with the rule. *Id.* It is well-settled that Fed.R.Civ.P. 9(b)'s

19   particularity requirement applies to both federal and state law causes of action. *Vess v. Ciba-*

20   *Geigy*, 317 F.3d. at 1103.

21        **1.**     **The SAC Does Not Allege "Who, What, When and Where"**

22        Under California law, the "indispensable elements of a fraud claim include a false

23   representation, knowledge of its falsity, intent to defraud, and justifiable reliance." *Vess* at 1105,

24   *citing Moore v. Brewster,* 96 F.3d 1240, 1245 (9th Cir. 1996) (additional citations omitted). While

25   the SAC alleges knowledge of falsity, intent to defraud and justifiable reliance, the law requires

26   Baskin-Robbins to aver not only the specific content of the allegedly false representations, but also

27   their specific context.

28

---

*Baskin-Robbins Franchised Shops et*     **Page 20**     **Notice of Motion and Motion to Dismiss**
*al. v. Gill et al., C07-02441*          **Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)**

1    Other than rehashing the allegation that John Gill made false representations regarding an

2    ice machine and dipping cabinet (which are not alleged to bear any Baskin-Robbins trademarks or

3    trade dress, and whose competitive effect on Baskin-Robbins also is not alleged), Count V of the

4    SAC only repeats and realleges the prior allegations of the SAC, a pleading style that fails to meet

5    Rule 9(b)'s particularity requirements. *See* SAC, ¶ 85 ("In further pursuit of this scheme, as set

6    forth above in Paragraphs 32-60, Sukpran [John] Gill concealed from Baskin-Robbins material

7    facts relating to the Country Creamery store, including those facts relating to his active and

8    substantial involvement in the establishment and operation of the business"). What specific

9    statements is John Gill alleged to have made, to whom, where, and when? These key questions are

10   left unanswered by Count V of the SAC's bald baseless, allegations of fraud.

11       The SAC identifies at least one person to whom John Gill is alleged to have made rather

12   vaguely alleged misstatements – Baskin-Robbins employee Bill Gault. SAC ¶ 49. But nowhere

13   does the SAC allege where either speaker or listener was at the time the statement(s) allegedly

14   were made, or whether the statements were made in person or by telephone or other means. Nor

15   does the SAC specify the time or date of the statements other than in the most general terms.  Such

16   vague allegations concerning statements allegedly made over five months ago fail to satisfy Rule

17   9(b), and failure to properly allege when purportedly fraudulent statements were made may be

18   fatal to a complaint. *See, e.g., Foley v. Bates*, 2007 WL 1430096, at *11 (N.D.Cal. 2007).

19           **2.    Plaintiffs' Complaints Regarding the Dipping Cabinets are
                     Immaterial**

20       Under California law, not only must the plaintiff allege that the defendant made false

21   statements of fact upon which he relied to his detriment, but the allegations must also be material:

22   "the allegedly false misrepresentations had to involve facts that were material, such that without

23   them, [plaintiff] would not have entered into the [contract]." *Ismart Intern. Ltd. v. I-Docsecure,

24   LLC*, 2005 WL 588607 (N.D.Cal. Feb. 14, 2005). The only specific allegation in Count V is that

25   John Gill made false statements of fact to a Baskin-Robbins employee concerning "the purchase of

26   equipment for the Country Creamery Store." This allegation, even assuming it to be true, begs the

27

28

---

*Baskin-Robbins Franchised Shops et          **Page 21**          Notice of Motion and Motion to Dismiss
al. v. Gill et al., C07-02441*                                   Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1    question of materiality. It defies credulity that the sale of two used trade fixtures from defunct

2    Baskin-Robbins stores, which are not alleged to have borne any Baskin-Robbins trademarks or

3    trade dress, is of any material consequence to Baskin-Robbins. Even if true, Baskin-Robbins's

4    allegations regarding the dipping cabinets are not specifically alleged to be material, nor would

5    such an assertion of materiality be credible on its face. Accordingly, the SAC fails to state a claim

6    for fraud pursuant to Fed.R.Civ.P. 12(b)(6).

7              **3.      BR IP Holder Has No Relationship With the Gills**

8          As with all other counts of the SAC, BR IP Holders' claims are lumped together with

9    Baskin-Robbins Franchised Shops LLC's claims, under the rubric "Baskin-Robbins," as if they

10   were one and the same. However, the SAC is devoid of any allegations that BR IP Holder ever

11   came into contact with the Gills, that the Gills were aware of its existence or alleged licensing

12   relationship with Baskin-Robbins Franchised Shops LLC, that it relied on any statements or

13   actions by John Gill, or that it suffered any damages by virtue of any statements or actions made

14   by either defendant.  Again, unless BR IP Holder is an *alter ego* of Baskin-Robbins Franchised

15   Shops LLC, it has no standing to sue for fraud. Accordingly, taking the allegations of the SAC at

16   their face, BR IP Holder has suffered no injury in fact and should be dismissed as a plaintiff as to

17   Count V of the SAC.

18        **F.      This Court Should Dismiss the SAC Without Leave To Amend**

19         Normally, motions to dismiss are granted with leave to amend, in order to allow the parties

20   to litigate a case on its merits. However, in this case, Baskin-Robbins has already had three bites at

21   the apple, having already filed a first, second and now third complaint, alleging essentially the

22   same claims (although Baskin-Robbins did assert, and then dismiss, fraud claims against Gurmeet

23   Gill and the owner of the Country Creamery, Isher Gill). Baskin-Robbins is a very frequent and

24   experienced litigant, no stranger to the pleading requirements of the Federal Rules of Civil

25   Procedure. Allowing Baskin-Robbins to waste yet more of the Court's and Defendants' time and

26   resources with a *fourth* complaint in this matter would be unfair. *See, e.g., Azadpour v. Sun*

27

28

*Baskin-Robbins Franchised Shops et*          **Page 22**          **Notice of Motion and Motion to Dismiss**
*al. v. Gill et al., C07-02441*                                    **Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)**

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593

1  *Microsystems, Inc.,* 2007 WL 2141079 (N.D.Cal. July 23, 2007) (refusing to allow *pro se* plaintiff

2  to file a third amended complaint against large corporate defendant). If this Court does grant

3  Baskin-Robbins leave to amend, leave should be conditioned upon payment of at least some of the

4  defendants' legal fees in responding to withdrawn motions and complaints.

5         DATED: September 25, 2007.

6                                    DHILLON & SMITH

7

8

9            By:    _____

10                  Harmeet K. Dhillon
                    Attorneys for Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  *Baskin-Robbins Franchised Shops et*          **Page 23**          **Notice of Motion and Motion to Dismiss**
    *al. v. Gill et al., C07-02441*                                   **Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)**

**Dhillon & Smith**
214 Grant Ave., Suite 400
San Francisco, CA 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593