# EXHIBIT 7

THE LAW OFFICES OF
# SINGLER, NAPELL & DILLON, LLP

# TRANSMITTAL LETTER

DATE: 29 August 2007

TO: Harmeet Dhillon, Esq.
Dhillon & Smith
214 Grant Avenue, Suite 400
San Francisco California 94108

FROM: Bruce J. Napell          RE: Gill / Baskin Robbins

ENCLOSED ARE THE FOLLOWING:

Copy of letter dated 8 May 2007 to Jeffrey Karlin, Esq. and Dunkin Brands

✓    For your review and/or file

____ Please sign and date where indicated and return to this office in the enclosed envelope

____ For approval, comments, correction

✓    Per your request

____ Filing of original and return of the endorsed-filed copies to the undersigned in the enclosed envelope

____ Other:

Thank you.

SINGLER NAPELL & DILLON, LLP

*Sharon Campbell*

Sharon Campbell,
Office Manager

365/001/0004.1

THE LAW OFFICES OF
# SINGLER, NAPELL & DILLON, LLP

May 8, 2007

*Via Federal Express and Certified Mail*

Jeffrey L. Karlin, Esq.
Gray, Plant, Mooty
2600 Virginia Avenue, N.W.
Suite 1111 – The Watergate
Washington, DC 20037-1931

Dunkin Brands
130 Royall Street
Canton, MA 02021

Att'n: Legal Department

Re: Notice of Default and Termination
Baskin-Robbins Franchise Numbers PC 361197 and PC 340372
Sukpran Gill and Gurmeet Gill

Dear Mr. Karlin:

This firm represents Sukpran and Gurmeet Gill, franchisees of two Baskin-Robbins stores located at 4493 Century Blvd., Pittsburg, and 1924 Grant Street, Suite # 2, Concord, California. This letter is in response to your letter dated April 30, 2007, and styled a "Notice of Default and Termination."

The Gills by this letter contest the Notice of Default: they deny that they are in default under their Agreements, and specifically deny the assertions in your letter (1) that they "own and/or operate" a competing ice cream store and (2) that any of their conduct constitutes fraud. In the alternative, under California law the Gills are entitled to a reasonable opportunity to cure the alleged defaults set out in your letter, and upon receipt of proper notice of any curable defaults will undertake to cure them. Finally, a contractual provision purporting to permit Baskin-Robbins to terminate the Gills' franchise agreements if they own and/or operate a non-Baskin-Robbins retail ice cream store would violate California's prohibition on contracts in restraint of trade, and be to that extent unenforceable. As further discussed below, Baskin-Robbins has no grounds for its threatened termination of the Gills' franchise agreements, and the Notice of Default should be withdrawn.

**The Gills do not own or operate another ice cream store:** As Mr. Gill explained to you on the telephone last week, his parents recently opened an ice cream store ("Country Creamery") in American Canyon, California. That store is owned and operated by his parents; your franchisees, Sukpran and Gurmeet Gill, own no interest. The business license, seller's and health permits (copies attached) are in his father's name. Country Creamery operates under the tax identification number which Mr. Gill's father has used for several previous businesses. Likewise, the premises in American Canyon is leased to Mr. Gill's father. Mr. Gill sold his parents spare dipping cabinets he

Jeffrey L. Karlin, Esq.
May 8, 2007
Page 2

had purchased from a closing Baskin-Robbins. However, making a sale to a third party is not the equivalent of owning, maintaining or engaging in the third party's business.

Mr. Gill and his parents are independent adults, with separate identities and finances. Mr. Gill's parents' ownership of an ice cream store does not constitute Mr. Gill's ownership of that store. Country Creamery is managed by Mr. Gill's mother, who, I am told previously managed a Baskin-Robbins owned by another of her sons. However, her status as a former Baskin-Robbins manager is irrelevant to the issues raised by your Notice. Since the Gills neither own nor operate the Country Creamery, the Notice of Default should be withdrawn.

**The Gills are entitled to an opportunity to cure:** In the event Baskin-Robbins continues to insist that the Gills have in fact breached their franchise agreements, they are entitled to notice of the specific act or acts which constitute a breach, and to a reasonable opportunity to cure. To forestall any games, Mr. Gills' parents' ownership of an ice cream store, without participation by Mr. Gill, cannot be the basis of such a Notice.

The assertion in your Notice that the Gills' alleged acts "constitute fraud, and, as a matter of law, cannot be cured," is incorrect. The California Franchise Relations Act, which protects all California franchisees - including Baskin-Robbins franchisees,[1] regulates franchise terminations. Two sections deal with terminations prior to natural expiration. Section 20021 contains an exclusive list of eleven defaults which support termination without the opportunity to cure. Violation of a covenant not to compete is not among the breaches listed in that section. This is not surprising, as provisions of a contract in restraint of trade (of which a covenant not to compete is an obvious example) are specifically made void by Bus. & Prof. Code § 16600.[2] Other terminations for cause are controlled by § 20020, which requires that the franchisee be provided with notice and a reasonable opportunity to cure.

Paragraph 9.1.4 of the Concord franchise agreement lists defaults for which no cure period is available under the contract. It bears noting that violation of the covenant not to compete (§ 8.0) is not one of the grounds listed in that paragraph. Paragraph 16.3 of the Pittsburg franchise agreement does list non-compliance with the non-compete covenant (¶ 16.3.8) as a breach giving Baskin-Robbins the "option" to terminate the franchise without the opportunity to cure, "immediately upon written notice." The Notice of Default, however, appears to acknowledge that this provision is unenforceable under California law, as it gives the Gills conflicting instructions: the third paragraph states that their franchises *may be* immediately terminated ("effective upon receipt of this Notice, or as provided by applicable law."), and the fifth paragraph states that they *may* have 30 or more days to cure. This ambiguous message cannot stand as sufficient notice,

---

[1] Bus & Prof. Code § 20015. See also § 20010 [the protections of the Franchise Relations Act cannot be waived]. .
[2] See also *Scott v. Snelling and Snelling, Inc.*, 732 F.Supp. 1034 (1990) [California does not apply the rule of reason in analyzing restraints of trade].

Jeffrey L. Karlin, Esq.
May 8, 2007
Page 3

either of the Gills alleged breach or of the acts Baskin-Robbins considers necessary to cure.

Attempting to re-characterize their alleged violation of the non-compete covenant as "fraud" is similarly insufficient. A mere assertion of "fraud" is meaningless, since "fraud" has a legal definition. If Baskin-Robbins actually contends that the Gills have committed fraud, the specific factual elements must be set forth. This is particularly necessary here, where the statute provides that the Gills are entitled to a "reasonable opportunity" to cure. Unless Baskin-Robbins clearly describes their alleged default, it will not have provided the Gills with a reasonable opportunity to cure it.

**Bad faith:** As you are undoubtedly aware, California law implies a duty of good faith and fair dealing into every contract.[3] The implied covenant ensures that no party deprives the other of the benefits of the contract, and obligates a contracting party vested with discretion to exercise it in good faith. It appears that Baskin-Robbins is not exercising its discretion in good faith: Although the Gills have been franchisees in good standing for fourteen years, Baskin-Robbins did not contact them during its alleged "investigation." Instead, based on circumstantial evidence, an incomplete investigation and vague assertions of default, and in violation of the Franchise Relations Act, it asserts that it has terminated their franchises. Furthermore, they are threatened that anything but acquiescence on their part will be met with a lawsuit. It is noteworthy in this regard that Baskin-Robbins' ignores § 28 of the Pittsburg agreement, which references its internal dispute resolution procedures, and requires that disputes be submitted to mediation. Given these facts, pursuing termination in the manner threatened in the Notice would certainly constitute a breach of the covenant of good faith.

I understand that Baskin-Robbins may feel it necessary to adopt an aggressive posture in managing its franchise system. Uniform compliance with standards, accurate reporting and timely, correct payments are important factors in a franchise's success. However, Baskin-Robbins cannot ignore the law or its franchisees' contract rights in pursuit of those goals. The Notice of Default served on the Gills appears to cross this line, and to threaten consequences unwarranted by the facts, and without providing the required procedural safeguards. I am hopeful that Baskin-Robbins will make a reasonable response to this letter, and that we can resolve this situation without litigation. However, proceeding with the threatened termination would deprive my clients of well over half a million dollars of equity and good will, built up over fourteen years; if necessary, they will fight to avoid that loss, and/or seek full compensation for it.

---

[3] See e.g., *Nedlloyd Lines B.V. v. Superior Court of San Mateo County (Seawinds Ltd.)* (1992) 3 Cal.4th 459 [also noting that "the state's interest is stronger when the covenant acts to protect weaker parties in an inherently unbalanced relationship...." *Id.*, p. 486].

Jeffrey L. Karlin, Esq.
May 8, 2007
Page 4

I look forward to working with you to resolve this situation in a mutually satisfactory fashion.

Sincerely,



Bruce Napell

Enclosures

cc:   Sukpreh (John) Gill

