1  HARMEET K DHILLON, ESQ. (SBN:207873)
   DAVID LIHWEI LIN, ESQ. (SBN:243448)
2  DHILLON & SMITH
   214 Grant Avenue, Suite 400
3  San Francisco, CA 94108
   Telephone: (415) 433-1700
4  Facsimile: (415) 520-6593

5  Attorneys for Defendants
   Sukpran and Gurmeet Gill
6

7

8               IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12 | BASKIN-ROBBINS FRANCHISED | Case No. C07-02441 PJH
   | SHOPS LLC and BR IP HOLDER LLC, |
13 |                           | **NOTICE of MOTION and**
   |     Plaintiffs,           | **MEMORANDUM of POINTS AND**
14 |         v.                | **AUTHORITIES IN SUPPORT OF**
15 |                           | **MOTION TO DISMISS SECOND**
   | SUKPRAN GILL and GURMEET GILL | **AMENDED COMPLAINT PURSUANT**
16 |                           | **TO FED. R. CIV. P. 12(b)(1)**
   |     Defendants.           |
17 |                           | **Date:** November 7, 2007
18 |                           | **Time:**  9:00 am

19

20

21

22

23

24

25

26

27 **Baskin-Robbins Franchised Shops**     Page    Notice of Motion and Motion to Dismiss
   et al. v. Gill et al., C07-02441          i     Pursuant to Fed. R. Civ. P. 12(b)(1)
28

**TABLE OF CONTENTS**

Table of Contents ........................................................................................................................... ii
Table of Authorities ...................................................................................................................... iii
NOTICE of MOTION .................................................................................................................... 1
RELIEF SOUGHT ......................................................................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1
I.      INTRODUCTION ............................................................................................................. 1
II.     LEGAL STANDARD ....................................................................................................... 3
III.    FACTUAL BACKGROUND ............................................................................................ 4
        A.      Relationships Among the Parties ........................................................................... 4
        B.      The Termination Notice ......................................................................................... 5
        C.      Post-Termination-Notice Franchise Relationship .................................................. 7
IV.     ARGUMENT ..................................................................................................................... 8
        A.      This is a State Law Contract Dispute Disguised in Lanham Act Clothing ............ 8
                1.      It is Clear That Absent a Valid Termination, the Gills are Entitled
                        to Operate the Baskin-Robbins Stores ........................................................ 9
                2.      The Termination Notice is Equivocal At Best And Cannot Be Said
                        to Supply a Basis for Federal Question Jurisdiction .................................. 9
        B.      Plaintiffs' Claims Do Not "Arise Under" Federal Law ........................................ 11
        C.      Plaintiffs Have Not Established Diversity Jurisdiction ........................................ 14
        D.      The Court Should Decline to Exercise Supplemental Jurisdiction ...................... 15
V.      CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Biagro Western Sales Inc. v. Helena Chemical Co.*, 160 F.Supp.2d 113 (E.D.Cal. 2001) ............... 3

*Dolch v. United California Bank*, 702 F.2d 178, 180 (9th Cir. 1983) ............................................ 13

*Duncan v. Stuetzle*, 76 F.3d 1480, 1487-88 (9th Cir. 1996) ........................................................... 2

*Foley v. Bates*, No. C 07-0402 (PJH), 2007 WL 1831133 (N.D.Cal. June 25, 2007) ..................... 3

*Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992) ................................................................. 15

*Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) ..................... 15

*Int'l Armor & Limousine Co. v. Maloney Coachbuilders*, 272 F.3rd 912, 916 (7th Cir. 2001) ....... 11

*Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 376 (1994) ............................................ 3

*Majestic Ins. Co. v. Allianz Int'l Ins. Co.*, 133 F.Supp.2d 1218 (N.D. Cal. 2001) .......................... 14

*Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir. 1977) .............................. 4

*Postal Instant Press v. Clark*, 741 F.2d 256, 257 (9th Cir. 1984) ............................................. 2, 12

*Safe Air v. Meyer,* 373 F.3d 1035, 1039 (9th Cir.2004) ................................................................... 3

*Scholastic Enter., Inc. v. Fox Enter., Inc.*, 336 F.3d 982 (9th Cir. 2003) ................................ 13, 14

*Scott v. Pasadena Unified School District,* 306 F.3d 646, 664 (9th Cir.2002) .............................. 15

*St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.) .................................................................. 3

*Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221 (9th Cir. 1989) ......................................... 3

*T.B Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2nd Cir. 1964) ........................................................ 11

*Thornhill Publ'g Co. v. General Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir.1979) ............... 3, 4

*Topolos v. Caldewey*, 698 F.2d 991 (9th Cir. 1983) ..................................................................... 12

*Trentacosta v. Frontier Pac. Aircraft Indus.,* 813 F.2d 1553, 1557-58 (9th Cir.1987) ..................... 4

**Statutes**

15 U.S.C. § 1114 ............................................................................................................................. 8

15 U.S.C. § 1125(a) ......................................................................................................................... 8

15 U.S.C. § 1125(c) ......................................................................................................................... 8

28 U.S.C. § 1338 ........................................................................................................................... 11

28 U.S.C. § 1367(a) ....................................................................................................................... 15

28 U.S.C. §1331 ............................................................................................................................ 16

Cal. Bus. & Prof. Code § 20000 *et seq.* ....................................................................................... 10

**Rules**

Civil L.R. 7-2(b)(3) ......................................................................................................................... 1

Fed.R.Civ.P 12(b)(6) ................................................................................................................... 3, 4

Fed.R.Civ.P. 12(b)(1) ......................................................................................................... 2, 3, 4, 15

Fed.R.Civ.P. 9(b) ............................................................................................................................ 4

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE THAT,** on November 7, 2007 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3, 17th Floor, San Francisco Federal Building, 450 Golden Gate Avenue, San Francisco, California, Defendants Sukpran ("John") and Gurmeet Gill (collectively, "Defendants" or the "Gills") will move this Court to dismiss the Second Amended Complaint ("SAC") filed by Baskin-Robbins Franchised Shops LLC ("Baskin-Robbins") and BR IP Holder LLC ("BR IP Holder") (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(1), on the grounds that Plaintiffs have failed to establish this Court's subject matter jurisdiction. Defendants respectfully submit that the three claimed federal causes of action are truly state law causes of action in disguise that do not "arise under" federal law; that Plaintiffs have not established diversity jurisdiction over the remaining two state law claims; and that this Court should decline to exercise supplemental jurisdiction.

**RELIEF SOUGHT**

Pursuant to Civil L.R. 7-2(b)(3), Defendants request that the Court dismiss the SAC in its entirety, with prejudice. In the alternative, Defendants ask that the Court dismiss those claims that the Court finds it lacks jurisdiction over, or in the exercise of its judicial discretion it declines to exercise jurisdiction over.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Fundamentally, this case presents a contract dispute between Baskin-Robbins and two of its franchisees – the Gills – concerning whether or not Baskin-Robbins was entitled to peremptorily terminate the Gills' franchise agreements with Baskin-Robbins. Plaintiffs allege that John Gill breached covenants not to compete in two franchise agreements through his alleged involvement with his father's ice cream store, the Country Creamery, in another county from the

| **Baskin-Robbins Franchised Shops et al. v. Gill et al., C07-02441** | **Page 1** | **Notice of Motion and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)** |

Baskin-Robbins franchises he operates. Gill Decl., ¶15. What this case manifestly is *not* is a trademark dispute, much as Plaintiffs would like to use the skill of artful pleading to have this Court determine a garden-variety contract dispute governed by state law.

Resolution of this case requires determination of two important California state law public policy considerations and sets of statutes: (1) California law concerning the validity of any covenant not to compete or restraint of trade, such as the ones contained in Baskin-Robbins' form nationwide franchise agreements; and (2) whether the California Franchise Relations Act ("CFRA") requires notice and an opportunity to cure the alleged defaults Baskin-Robbins used here as an excuse to attempt termination of the two franchise agreements and sue the Gills for purported trademark violations.

If this Court were to exercise its jurisdiction in this matter, *any* contract dispute between a franchisee and franchisor which hinges upon the interpretation of California state law could be placed before this Court, despite Article III's strict requirements delimiting federal question jurisdiction. *See Duncan v. Stuetzle*, 76 F.3d 1480, 1487-88 (9th Cir. 1996) (holding that the mere existence of protected trademark, without more, does not provide basis for federal jurisdiction); *Postal Instant Press v. Clark*, 741 F.2d 256, 257 (9th Cir. 1984) (holding that the mere existence of a patent or copyright does not confer federal jurisdiction over what is essentially a contract dispute). Nor do the doctrines of diversity or supplemental jurisdiction save the non-trademark claims from attack under Fed.R.Civ.P. 12(b)(1). It is far from clear that complete diversity of citizenship between Plaintiffs and Defendants exists from the face of the Complaint and documents referenced therein. Given the absence of any federal question and lack of diversity jurisdiction on the facts as presently known, this Court should decline supplemental jurisdiction over the state law claims.

## II.     LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction, derived from the case or controversy clause of Article III of the U.S. Constitution. *See Biagro Western Sales Inc. v. Helena Chemical Co.*, 160 F.Supp.2d 113 (E.D.Cal. 2001). Federal courts are limited in jurisdiction, and it is presumed that a case lies outside the jurisdiction of the federal courts unless the Plaintiff proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 376 (1994); *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221 (9th Cir. 1989); *Thornhill Publ'g Co. v. General Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). Defendant may "rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.) (*citations omitted*), *cert. denied,* 493 U.S. 993 (1989). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.*

This Court recently noted the distinction between "facial" and "factual" 12(b)(6) motions in *Foley v. Bates*, No. C 07-0402 PJH, 2007 WL 1831133 (N.D.Cal. June 25, 2007) (citing *Safe Air v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004)):

> A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. In a facial attack, the court must consider allegations of the complaint as true. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court then determines the facts for itself.
>
> As pointed out by another court:
>
> [I]n a factual 12(b)(1) motion ... *no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.*

*Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir. 1977) (emphasis added).

Although deference is given to a plaintiff factual allegations in a 12(b)(6) motion, plaintiff's allegations need not be taken as true when considering a Rule 12(b)(1) motion. *See Thornhill Publishing,* 594 F.2d at 733 ("[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims"); *see also Trentacosta v. Frontier Pac. Aircraft Indus.,* 813 F.2d 1553, 1557-58 (9th Cir.1987).

### III.     FACTUAL BACKGROUND

The Gills have yet to answer the SAC, which was filed on September 4, 2007, or to assert counterclaims or affirmative defenses. Accordingly, in order to give the Court the appropriate context for determining this threshold motion, this motion makes reference to and incorporates the Declaration of Sukpran Gill ("Gill Decl."), including its exhibits, and the Declaration of Harmeet K. Dhillon ("Dhillon Decl."), including its exhibits. These documents are submitted to the Court solely for purposes of determining this motion to dismiss, and not for purpose of determining Defendants separate Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6) & 9(b).

#### A.     Relationships Among the Parties

John and Gurmeet Gill, who are husband and wife, have been Baskin-Robbins franchisees for over a decade. John and Gurmeet jointly are the franchisees of a Baskin-Robbins retail ice cream store located at 4493 Century Blvd., Pittsburg, California. SAC, ¶3; Gill's Decl. ¶4 (Ex. 1). The Defendants entered into a Franchise Agreement with Baskin-Robbins USA, Co., a California corporation. *Id.* They operate the Pittsburg Store pursuant to that franchise agreement commencing on October 26, 1996. SAC, ¶3; Gill Decl., ¶4.

John Gill also is the sole franchisee of a Baskin-Robbins ice cream store located in Concord, California, pursuant to a franchise agreement dated April 22, 2004 and entered into between John Gill and Baskin-Robbins USA Co., a California corporation.    Gill Decl., ¶7.

**Baskin-Robbins Franchised Shops**            Page       Notice of Motion and Motion to Dismiss
**et al. v. Gill et al., C07-02441**              4         Pursuant to Fed. R. Civ. P. 12(b)(1)

According to its terms, the Concord franchise agreement expires on June 30, 2017. *Id.,* ¶8. Both the Pittsburg and Concord stores consistently have performed above average for the Baskin-Robbins franchise system, with gross sales well in excess of the average stand-alone Baskin Robbins in the northern California area. *Id.,* ¶12.

### B.     The Termination Notice

The Gills were operating the Pittsburg store and defendant John Gill was operating the Concord store without incident until earlier this year. The Gills were and are still paying franchise fees and royalties to Baskin Robbins according to the terms of the Franchise Agreements. *Id.*, ¶30. Baskin-Robbins had expressed no concerns about the operation of these two stores in recent memory. *Id.,* ¶13.

On or about May 1, 2007, Defendants received a three-page letter entitled "Notice of Default and Termination" ("Termination Notice") from Jeffrey Karlin, identifying himself as counsel for Baskin-Robbins Franchised Shops LLC. *Id.,* ¶14. The Termination Notice accused Defendants of breaching the franchise agreements by alleging John Gill's involvement in owning and/or operating an ice cream store known as the "Country Creamery" in American Canyon, California, in violation of the terms of covenants not to compete with Baskin Robbins during and after the terms of the franchise agreements in question. *Id.,* ¶15. The Termination Notice incorrectly stated that John Gill "own[ed] and/or operate[d]" the Country Creamery Store, when in fact the store is owned by John Gill's father, Isher Gill, and is operated jointly by Isher Gill and his wife, Maninder Gill. *Id.,* ¶16.

The Termination Notice also incorrectly stated that the Country Creamery is located nearby the Gills' ice cream stores and other ice cream stores owned by other Baskin-Robbins franchisees, when in fact the Country Creamery is located 32 miles from the Pittsburg franchise, 22 miles from the Concord franchise, and the nearest Baskin-Robbins ice cream store operated by other franchisee is located in a different city and county. *Id.,* ¶17.

The Termination Notice further states that the Gills' ownership and/or operation of the Country Creamery constituted an incurable default and that they should immediately cease using Baskin-Robbins trademark, end their ownership or involvement with Country Creamery store, and comply with the "post-termination obligations set forth in the Franchise Agreements." *Id.,¶*18. Contradicting the purported termination, the Termination Notice went on to state that if the default were, as a matter of law, curable, then Baskin-Robbins would give the Gills thirty days from the receipt of the Termination Notice to cure the default. *Id.,* ¶19. However, if Defendants attempted to contest Baskin-Robbins' allegations and immediate termination notice, Baskin-Robbins would sue the Gills for damages and to enforce the termination. *Id.,* ¶20.

The Termination Notice concluded by making two additional contradictory statements: (1) "if it should be determined that there is no good cause for termination of the Franchise Agreements then Baskin-Robbins will consider this Notice to be void"; and "if at any time it is your position that the termination is valid, please advise [Baskin-Robbins' counsel] immediately in writing, so that [Baskin-Robbins] can take appropriate legal steps to completely end the relationship." *Id*. ¶¶20-21 & Ex. 5, p.3.

Confronted with a contradictory Termination Notice ordering contradictory actions, John Gill called Mr. Karlin on May 2, 2007, to ascertain what Baskin-Robbins meant by the contradictory notice. *Id.,* ¶23. John Gill offered to shut down the two stores if that was what Baskin-Robbins wanted. *Id.,* ¶24. During the call, Mr. Karlin specifically retracted the Termination Notice's demand that Defendants cease use of the Baskin-Robbins trademark, and advised John Gill to continue with the operation of the two franchises, pending further discussion between the Gills and Baskin-Robbins. *Id.,* ¶25.

Following his May 2, 2007 phone call with Mr. Karlin, John Gill retained Bruce Napell, a California franchise law attorney. *Id.,* ¶26. Mr. Napell prepared a response to the Termination Notice, but before Mr. Napell had had the opportunity to respond to the Termination Notice,

| **Baskin-Robbins Franchised Shops et al. v. Gill et al., C07-02441** | Page 6 | Notice of Motion and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) |
|---|---|---|

Baskin-Robbins filed the original complaint in this matter. *Id.,* ¶27. The lawsuit was served on the Gills on May 25, 2007. *Id.,* ¶28.

### C.  Post-Termination-Notice Franchise Relationship

Since this lawsuit was initiated, the Gills have had numerous communications with Baskin-Robbins personnel regarding the operation of their two Baskin-Robbins stores. *Id.,* ¶29. The Gills have continued to send weekly royalty payments and statements of sales to Baskin-Robbins without incident, and Baskin-Robbins has continued to accept those payments. *Id., ¶*30. The Gills continue to order ice cream from Baskin-Robbins to replenish the supplies in both stores, and Baskin-Robbins has continued to sell and deliver ice cream to both locations, without incident or objection. *Id.,* ¶31. The Gills continue to receive regular communications from Baskin-Robbins concerning advertising, promotions, and marketing as would any other Baskin-Robbins franchisee. *Id.,* ¶32. In fact, an employee of Baskin-Robbins invited John Gill to attend a Baskin-Robbins franchisee meeting. *Id.* Defendants took all these continued contacts and transactions with Baskin-Robbins to mean that, as Mr. Karlin had instructed John Gill on May 2, 2007, Baskin-Robbins had no objection to Defendants' operation of the two Baskin-Robbins stores, pending resolution of the contract dispute. *Id.*

On June 12, 2007, Baskin-Robbins filed a motion for a preliminary injunction against Defendants asking the Court to prohibit the Gills' use of the Baskin-Robbins trade names. *Id.,* ¶33. The motion was withdrawn on July 19, 2007, and has not since been re-filed. *Id.,* ¶34. On the same day, however, Baskin Robbins filed a First Amended Complaint adding a claim of fraud against the Gills and John Gill's father, Isher Gill, who owns the Country Creamery. *Id.,* ¶35. The First Amended Complaint made no specific allegations against either Defendant Gurmeet Gill or Isher Gill concerning fraud. *Id.*

After being contacted by the Gills' litigation counsel, Dhillon & Smith, Baskin-Robbins voluntarily withdrew the First Amended Complaint and filed a Second Amended Complaint on

| Baskin-Robbins Franchised Shops et al. v. Gill et al., C07-02441 | Page 7 | Notice of Motion and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) |
|---|---|---|

1  September 4, 2007, dismissing Isher Gill as a defendant and dismissing Gurmeet Gill as a
2  defendant in the fraud count. *Id* ¶36. The Second Amended Complaint also deleted various
3  references to state law claims throughout. *Id*.

4  While this litigation is pending, Baskin-Robbins continues to sell ice cream to the Gills'
5  two franchises, continues to accept their franchise royalty fees and advertising fees, and continues
6  to communicate with them concerning joint marketing, advertising and promotional efforts using
7  the Baskin-Robbins trademarks. *Id.,* ¶37. The Gills have offered several times to shut down the
8  two stores and stop using the Baskin-Robbins trademarks upon Baskin-Robbins' clarification of
9  the Termination Notice. *Id.,* ¶39. Since the time Defendants received the Termination Notice, they
10 have had no substantive contacts with the Country Creamery store, except to drop their children at
11 the store during the summer to visit their grandparents. *Id.,* ¶40.

### IV.   ARGUMENT

In this motion, the Gills assert both facial and factual challenges to subject-matter jurisdiction.

#### A.   This is a State Law Contract Dispute Disguised in Lanham Act Clothing

In ¶6 of the SAC, Plaintiffs invoke this Court's jurisdiction on the grounds that this lawsuit concerns a federal question (28 U.S.C. § 1331) – namely, application of the Lanham Act. Plaintiffs allege that the Gills' continued operation of the two Baskin-Robbins stores following the April 30, 2007 Termination Notice supports three causes of action: (1) trademark infringement pursuant to 15 U.S.C. § 1114; (2) unfair competition in violation of 15 U.S.C. § 1125(a); and (3) trade dress infringement in violation of 15 U.S.C. § 1125(c). *See* SAC, Count II, ¶¶ 71-79. In fact, this dispute centers on whether Sukpran and Gurmeet Gill breached the Pittsburg and Concord

Franchise Agreements, which has absolutely nothing to do with the Lanham Act or any other federal law, notwithstanding the incantation of the magic words "trademark" and "Lanham Act."

### 1. It is Clear That Absent a Valid Termination, the Gills are Entitled to Operate the Baskin-Robbins Stores

There is no dispute that the Gills were permitted, pursuant to the Franchise Agreements, to make full use of the Baskin-Robbins trademarks in the course of operating the Pittsburg and Concord Stores. *See* SAC, ¶¶3-4, & 17. Defendants have been authorized to use the trademarks in question since 1996. *See* Gill Decl., ¶3. They have been franchisees in good standing throughout their tenure as Baskin-Robins franchisees. *See id.,* ¶13. There is no allegation that either of the Gills, at any point in time, exceeded the scope of the permitted use of the trademarks, other than the allegation that their right to use those trademarks terminated prematurely at Baskin-Robbins' instigation. *See* SAC, ¶72. The Gills are entitled to use the very trademarks and methods that Baskin-Robbins seeks to invoke as a basis for jurisdiction. Gill Decl. Ex. 2 §1.0; Ex. 4, §10.2. Absent an effective termination by Baskin-Robbins which complies with applicable state law governing contracts and franchisor/franchisee relations, Defendants continue to have the right to use the trademarks, and there is no unfair competition or trademark/trade dress infringement under the Lanham Act.[1]

### 2. The Termination Notice is Equivocal At Best And Cannot Be Said to Supply a Basis for Federal Question Jurisdiction

The very same termination language in bold type in the Termination Notice that Baskin-Robbins predicates its entire lawsuit upon manifestly demonstrates Baskin-Robbins' equivocation and uncertainty as to whether it was permitted to terminate the franchise agreements without an

---

1 The Gills separately argue that the SAC fails to state a claim for breach of contract in their accompanying Motion to Dismiss pursuant to Fed. R. Civ. 12(b)(6), filed separately from this motion due to the differing evidentiary consideration before the court on a 12(b)(6) motion.

**Baskin-Robbins Franchised Shops**  **Page**  **Notice of Motion and Motion to Dismiss**
**et al. v. Gill et al., C07-02441**  **9**  **Pursuant to Fed. R. Civ. P. 12(b)(1)**

1  opportunity to cure the alleged defaults within a statutorily or contractually mandated waiting
2  period governed by state law. For example, on page 2 of the Termination Notice, counsel for
3  Baskin-Robbins states that:

> **Pursuant to Section 9 of the [Concord ]Franchise Agreement for PC 340372 and Section 16 of the [Pittsburg] Franchise Agreement for PC 361197 and for the reasons stated in this Notice of Default and Termination, Baskin-Robbins elects to and does hereby, without further notice, terminate the Franchise Agreements for PC 340372 and for PC 361197, effective upon receipt of this Notice,** *or as provided by applicable law*.

Gill Decl., Ex. 5) (italics added, bold in the original).  Baskin-Robbins' notice begs the obvious question – what is the applicable law invoked by Baskin-Robbins? Defendants are unaware of any provision in the Lanham Act governing the right of a franchisee to terminate a franchisor without cause. By parity of reasoning, Baskin-Robbins can only be referring to state franchise and/or contract law concerning the duty of good faith and fair dealing in franchise agreements, such as the California Franchise Relations Act.[2] Baskin-Robbins further begs this question twice more in the Termination notice. On page 2 of the Termination Notice, counsel for Baskin-Robbins states:

> Alternatively, if it should be determined *as a matter of law* that your defaults are curable, then Baskin-Robbins hereby gives you thirty (30) days from the receipt of this Notice in which to do those acts which you contend constitute a "cure" of the defaults under the Franchise Agreement. If, *as a matter of law,* a longer cure period is required, then that period is applicable to this Notice.

*Id*. Again, it is not clear from the context as to which bodies of law Baskin-Robbins contends should apply or who was to be the arbiter of that law.  Baskin-Robbins further "hedges its bets" in the termination letter on page 3, coyly stating that notwithstanding its conclusions in bold language, and stark notices of termination preceding, "[i]f it should be determined that there is no good cause for termination of the Franchise Agreements then Baskin-Robbins will consider this

---

[2] That California Franchise Relations Act, Cal. Bus. & Prof. Code § 20000 *et seq.*, bars Baskin-Robbins' attempted termination without notice and an opportunity to cure, is argued separately in Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and its arguments will not be repeated here.

| Baskin-Robbins Franchised Shops et al. v. Gill et al., C07-02441 | Page 10 | Notice of Motion and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) |
|---|---|---|

Notice to be void." *Id*.  Again, *who* should determine "good cause," and based upon what criteria?  The Termination Notice is notably silent.

Nothing could be further from a clear and unequivocal termination of contractually bargained-for trademark and trade dress rights than Baskin-Robbins' caveat-ridden, contradictory and elaborately hedged Termination Notice, whose effect is genuinely puzzling and for whose interpretation Baskin-Robbins *itself* repeatedly points to an unidentified arbiter of state franchise and contract law.  It is apparent that the Gills are entitled under the franchise agreements to use all of the Baskin-Robbins trademarks and trade dress at issue here. Absent an effective termination of their contract rights, there is no Lanham Act issue.  Baskin-Robbins' equivocal Termination Notice and dealings with the Gills as franchisees in good standing demonstrate that there has been no effective termination of the franchise agreements. Gill Decl., ¶¶17-21. Until such termination, this Court's jurisdiction over the SAC's Lanham Act claims does not arise.

### B.     Plaintiffs' Claims Do Not "Arise Under" Federal Law

The Federal Courts of Appeal have elucidated the threshold standard under which federal trademark and copyright jurisdiction are invoked.  28 U.S.C. § 1338 confers exclusive jurisdiction to federal courts for "any civil action arising under any Act of Congress relating to … copyright.." The Second Circuit held that an action arises under the Copyright Act of 1909, "if and only if the complaint is for a remedy expressly granted by the Act, … or asserts a claim requiring construction of the Act, … or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." *T.B Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2nd Cir. 1964).  Courts have repeatedly rejected attempts to invoke federal subject matter jurisdiction for state law claims by disguising contract disputes as trademark claims via artful pleading, including asserting remedies available only under the Lanham Act.  (See, e.g., *Int'l Armor & Limousine Co. v. Maloney Coachbuilders*, 272 F.3rd 912, 916 (7th Cir. 2001) (citing *Eliscu*).

1    The Ninth Circuit asserted that "just as the mere existence of a patent or copyright does not confer federal jurisdiction over what is essentially a contract dispute, the mere existence of the protected trade name and attendant symbol herein does not provide a basis for federal jurisdiction." (*Postal Instant Press v. Clark*, 741 F.2d 256, 257 (9th Cir. 1984)).  In *Postal Instant Press* (*PIP*), a franchise was terminated by the franchise owner due to the franchisee's alleged refusal to pay monthly royalties and file financial statements required by the franchise agreement. Upon termination, the franchise owner filed an unfair competition claim under the Lanham Act. However, the *PIP* court rejected the franchise owner's attempt to invoke federal jurisdiction, stating, "it is clear that this action fundamentally asserts contract claims and only incidentally involves the Lanham Trade-Mark Act."  Here, Baskin-Robbins is attempting a similar back-door invocation of federal subject matter jurisdiction by artfully pleading as a trademark issue what is fundamentally a state contract dispute.  Here, as in *PIP*, the underlying contract dispute is only, at best, tangentially related to the Lanham Act, and therefore does not "arise under" federal law.

The Ninth Circuit further defined the "arising under" standard in *Topolos v. Caldewey*, a book publishing case involving a threshold question of copyright ownership. 698 F.2d 991 (9th Cir. 1983). In *Topolos*, the court determined subject matter jurisdiction by looking to the "primary and controlling purpose of the suit," also referred to as the "principal issue," "fundamental controversy," and the "gist" or "essence" of the plaintiff's claim.  The *Topolos* court held that federal courts do not have subject matter jurisdiction over a suit on a contract simply because a copyright is the subject matter of the contract, although the court ultimately ruled in favor of the plaintiff because the principal and controlling issue in the case was ownership of the copyright. (*Id* at 993).  A similar reading defeats Plaintiffs' claims.  Here, not only is the Baskin-Robbins trademark not the principal issue of the claim, it is not even the subject matter of the suit, as there is no dispute as to ownership of the trademark or its use.  Baskin-Robbins has continued to treat the Gills as fully entitled to use its marks throughout the course of this litigation. Gill Decl., ¶¶29-

**Baskin-Robbins Franchised Shops**          Page    Notice of Motion and Motion to Dismiss
**et al. v. Gill et al., C07-02441**          12      Pursuant to Fed. R. Civ. P. 12(b)(1)

31. In fact, Baskin-Robbins has continued to collect franchise and royalty fees for the use of the trademarks. Gill Decl., ¶37.

Another Ninth Circuit decision determined that although the nature and scope of renewal copyrights and their assignability are federal questions, the *conditions* for valid assignment are not. *Dolch v. United California Bank*, 702 F.2d 178, 180 (9th Cir. 1983). The court thus recognized that where facts straddle jurisdictional boundaries, even claims that very closely approach federal subject matter jurisdiction qualifications do not automatically qualify as such. The *Dolch* court cited *T.B. Harms* in support of its holding, saying "the federal grant of a patent or copyright has not been thought to infuse with any national interest a dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law." (339 F.2d. at 286).

Here the principal contract dispute is not only unrelated to the Lanham Act claims, it is nearly wholly separate from any trademark, trade dress, or unfair competition assertions. The contract allegations by Baskin-Robbins are not only the principal issue in the instant case; they are wholly dispositive of the lawsuit. In fact, this Court cannot even meaningfully approach any Lanham Act issues without first determining the state breach of contract allegations. If a distinction between "assignment" and "assignability" prevents federal subject matter jurisdiction, the cavernous expanse between the contract dispute and the Lanham Act allegations here surely precludes Baskin-Robbins's plea for federal subject matter jurisdiction.

The Ninth Circuit in *Scholastic Enter., Inc. v. Fox Enter., Inc.*, 336 F.3d 982 (9th Cir. 2003) similarly upheld the district court's decision to decline federal question jurisdiction in a contractual dispute between two parties where one sought to enjoin the other from licensing a television series to a third party, claiming that a licensing agreement then in effect barred the third-party license. "The district court plainly concluded that the underlying dispute between Scholastic and Fox was contractual – whether the agreement had been effectively terminated – and, therefore, suitable for adjudication in state court." *Id.* at 984. Upon appeal, the Ninth Circuit agreed that the

issue of whether the contract governing the right to use and license the copyright, had been terminated effectively, was a matter of state law for a state court to determine: "Scholastic's success in terminating the agreement is a pure question of state contract law appropriate for adjudication in the California courts." *Id.* at 989.

In *Scholastic*, the defendant stipulated that it would not license the series to a third party pending a judicial determination of the contract termination's effectiveness; therefore, plaintiffs were under no threat of imminent, irreparable harm by waiting for a state court determination on the issue of effective contractual termination. Similarly, in this case, the Gills have stipulated to Plaintiffs that they will cease all use of the trademarks and other Baskin-Robbins intellectual property pending a judicial determination of Plaintiffs' claims, upon Baskin-Robbins' clarification as to whether its termination was with immediate effect, was subject to cure, and/or has been withdrawn. Gill Decl., ¶39; Dhillon Decl., ¶4, Ex. 1. Accordingly, as in *Scholastic*, this dispute concerns the validity of covenants not to compete under California law, the interpretation of California contract law, and California law governing fraud claims. All of these questions are governed by state law and are best left to the adjudication of the state courts.

**C.    Plaintiffs Have Not Established Diversity Jurisdiction**

Because the SAC fails to raise any issues arising under federal law, this Court's subject matter jurisdiction to entertain this action must rest either on the theory of diversity or supplemental jurisdiction. Indeed, the SAC specifically asserts diversity as a basis for this Court's jurisdiction. SAC, ¶ 6. Federal diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. *See Majestic Ins. Co. v. Allianz Int'l Ins. Co.*, 133 F.Supp.2d 1218 (N.D. Cal. 2001).

The SAC itself alleges, by reference to the underlying franchise agreements, that the contracts that gave rise to this action were entered into between the Gills and Baskin-Robbins USA, Co., a California corporation. *See* Gill Decl., Ex.2, p.1; Ex.4, p.1. The Gills' contacts with

Baskin-Robbins regarding the operation of both the Pittsburg and Concord franchises have always been with Baskin-Robbins personnel based in California. *See* Gill Decl. ¶9. If, as the foundational documents invoked in the SAC establish on their faces, Baskin-Robbins is a California entity, there is no complete diversity between the plaintiffs and the defendants. The SAC's bare assertion of successor-in-interest status of another entity besides the one the Gills contracted with is insufficient to establish diversity.

Where the jurisdiction of the court is challenged, the party invoking federal jurisdiction bears the burden of demonstrating that its jurisdictional allegations are supported by competent proof. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). Baskin-Robbins therefore bears the burden of demonstrating complete diversity of citizenship in light of the fact that, as explained above, subject-matter jurisdiction based on the existence of a federal question is lacking. Should Plaintiffs fail to establish diversity of citizenship, the SAC must be dismissed.

### D.     The Court Should Decline to Exercise Supplemental Jurisdiction

Plaintiffs invoke this Court's supplemental jurisdiction (28 U.S.C. § 1367(a)), presumably over Counts I (Breach of Contract) and V (Fraud), since each of them invokes state law claims. Pursuant to the supplemental jurisdiction statute, a district court may indeed retain supplemental jurisdiction over state claims when the federal claims are dismissed. *See* 28 U.S.C. §1367(a). However, the prerequisite for the court to exercise such power is that the court must have "original jurisdiction" over the case. *See id.* It is well-settled that dismissal of federal claims on jurisdictional grounds means that the court was without "original jurisdiction." *See Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001). Thus, if the Court dismisses Plaintiffs' federal claims pursuant to Federal R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction, the Court has no power to exercise its supplemental jurisdiction over the state claims and must dismiss all related state claims. *Id.*; *see also Scott v. Pasadena Unified School District,* 306 F.3d 646, 664 (9th Cir.2002) (holding that where the court found that plaintiff did not

1  have standing to assert a federal claim, the court lacked subject matter jurisdiction and therefore
2  had no discretion to retain supplemental jurisdiction over the pendent state law claims).
3      Plaintiffs in this case have failed to raise issues that would warrant this Court's jurisdiction
4  based on 28 U.S.C. §1331. The dismissal of plaintiffs' federal claims on this basis therefore
5  would require this Court to dismiss Plaintiffs' state-law breach of contract and fraud claims, and
6  accordingly dismiss the SAC altogether.

### V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court to dismiss the instant action for lack of federal question, diversity, or supplemental jurisdiction.

Dated: September 26, 2007

_____
Harmeet K. Dhillon, Esq.
Dhillon & Smith
Attorneys for Defendants Sukpran and Gurmeet Gill