1  Maria C. Rodriguez
   SBN 194201
2  SEYFARTH, SHAW LLP
   One Century Plaza, Suite 330
3  2029 Century Park East
   Los Angeles, California 90067-3063
4  Telephone:    (310) 277-7200
   Facsimile:    (310) 201-5219
5
6  Robert L. Zisk
   Eric L. Yaffe
7  Jeffrey L. Karlin
   SBN 144488
8  GRAY, PLANT, MOOTY, MOOTY
    & BENNETT, P.A.
9  The Watergate
   2600 Virginia Avenue, N.W.
10 Suite 1111
   Washington, D.C.  20037-1905
11 Telephone:    (202) 295-2200
   Facsimile:    (202) 295-2250

12                 UNITED STATES DISTRICT COURT

13        IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

14 BASKIN-ROBBINS FRANCHISED SHOPS    )  Case No. 3:07-cv-02441-PJH
   LLC and  BR IP HOLDER LLC,         )
15                                    )  MEMORANDUM OF POINTS AND
              Plaintiffs,             )  AUTHORITIES IN OPPOSITION TO
16                                    )  MOTION TO DISMISS SECOND
         v.                           )  AMENDED COMPLAINT PURSUANT
17                                    )  TO FED. R. CIV. P. 12(b)(6) & 9(b)
   SUKPRAN GILL and GURMEET GILL,     )
18            Defendants.             )  Date: November 7, 2007
                                      )  Time: 9:00 a.m.
19 _____  )

20

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

LA1 6660826.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................3

I.    LAW AND ARGUMENT ......................................................................................5

    A.  BASKIN-ROBBINS' TERMINATION OF THE FRANCHISE AGREEMENTS AT ISSUE HERE WAS VALID BECAUSE IN-TERM COVENANTS NOT TO COMPETE ARE ENFORCEABLE UNDER CALIFORNIA LAW ...........................5

    B.  THE TERMINATION OF THE FRANCHISEE AGREEMENTS WAS VALID UNDER THE CALIFORNIA FRANCHISE RELATIONS ACT .............................12

    C.  THE FRAUD CLAIM IN THE SECOND AMENDED COMPLAINT WAS SET FORTH WITH SUFFICIENT PARTICULARITY .....................................................13

    D.  BASKIN-ROBBINS HAS STATED A CLAIM FOR VIOLATIONS OF FEDERAL TRADEMARK LAWS........................................................................15

II.   CONCLUSION ....................................................................................................20

2

**TABLE OF AUTHORITIES**

**Federal Cases**

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir 1979).......................................16

*Baskin-Robbins, Inc. v. Taj California, Inc.*,
2003 WL 22768662 (C.D. Cal. Oct. 21, 2003) ............................................17

*Burger King Corp. v. Hall*, 770 F. Supp. 633 (S.D. Fla. 1991)................................17

*Burger King Corp. v. Majeed*, 805 F. Supp. 994 (S.D. Fla. 1992)............................16

*Century 21 Real Estate Corporation, Inc. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988)...............17

*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252 (9th Cir. 2001).................................17

*Comedy Club, Inc. v. Improv West Assocs., Inc.*, ___ F.3d ___,
2007 WL 25567202 (9th Cir. Cir., Sept. 7, 2007)........................................8

*Department of Parks & Recreation v. Bazaar El Mundo, Inc.*,
448 F.3d 1118 (9th Cir. 2006) ............................................15

*Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.*,
875 F. Supp. 966 (E.D.N.Y. 1994) ............................................16

*Great Frame Up Systems, Inc. v. Jazayeri Enterprises, Inc.*,
789 F. Supp. 253 (N.D. Ill. 1992)............................................7

*General Commercial Packaging v. TPS Package Eng'g, Inc.*,
114 F.3d 888 (9th Cir. 1997) ............................................9

*John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966 (11th Cir. 1983)............................17

*IBM v. Bajorek*, 191 F.3d 1033 (9th Cir. 1999)............................................10

*Keating v. Baskin-Robbins USA, Co.*, 2001 WL 407017 (E.D.N.C. March 27, 2001) ..............7

*Long John Silver's, Inc. v. Washington Franchise, Inc.*,
1980 U.S. Dist LEXIS 16635, No. 80-540-A (E.D. Va. June 24, 1980)....................................19

*Machinery Corp. v. Southmost Machinery Corp*, 742 F.2d 786 (3d Cir. 1984).........................14

*Medimatch, Inc. v. Lucent Technologies Inc.*, 120 F.Supp.2d 842 (N.D. Cal. 2000)................14

*Merry Maids Limited Partnership v. Kamara*,
No. Y-98-3564, 1998 U.S. Dist. LEXIS 19059 (D. Md. December 10, 1998) .........................19

*Nabisco Brands, Inc. v. Conusa Corp.*, 722 F. Supp. 1287, 1290 (4th Cir. 1989)....................18

3

*Neubronner v. Milken,* 6 F.3d 666 (9th Cir. 1993) ........................................................ 14

*Opticians Ass'n v. Independent Opticians,* 920 F.2d 187 (3d Cir. 1990) ....................................... 16

*Republic Env. Systems, (PA), Inc. v. Reichhold Chemicals, Inc.,* 1 54 F.R.D. 130 (E.D. Pa. 1994) ......................................................... 14

*Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644 (3d Cir. 1998) ............................... 14

*S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371 (3d Cir. 1992) ......................................... 16

*Scott v. Snelling & Snelling, Inc.,* 732 F.Supp. 1034 (N.D.Cal.1990) ........................................ 6

### State cases

*American Credit Indem. Co. v. Sacks,* 262 Cal. Rptr. 92 (Ct. App. 1989) ..................................... 11

*American Paper & Packaging Prods., Inc. v. Kirgan,* 228 Cal. Rptr. 713 (Cal. Ct. App. 1986) ........................................... 11

*Boughton v. Socony Mobil Oil Co.,* 41 Cal. Rptr. 714 (Ct. App. 1964) ........................... 5, 6, 7, 9

*Dayton Time Lock Service, Inc. v. Silent Watchman Corp.,* 52 Cal. App. 3d 1 (1975) ................. 8

*Dent Wizard Int'l Corp. v. Schowengerdt,* B147763, 2002 Cal. App. LEXIS 2878 (Ct. App. Mar. 14, 2002) ........................... 6

*Gordon v. Landau,* 321 P.2d 456 (Cal. 1958) ........................................................ 10

*Kelton v. Stravinski,* 138 Cal. Rptr.3d 877 (2006) ................................................. 8, 9

*Moran v. Harris,* 131 Cal.App.3d 913, 182 Cal.Rptr. 519 (4th Dist.1982) ................................ 6

*Muggill v. Reuben H. Donnelly Corp.,* 398 P.2d 147 (Cal. 1965) ..................................... 10

*Walia v. Aetna, Inc.,* 113 Cal. Rptr. 2d. 732 (Ct. App. 2001) ....................................... 6, 7

### Miscellaneous

Cal. Bus. & Prof Code § 2000, *et seq.,* .......................................................... 12

5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure ("Wright & Miller") (1990) ........................................................ 13

McCarthy, *McCarthy on Trademarks and Unfair Competition* ........................................ 16

15 U.S.C. § 1114 ................................................................................. 18

15 U.S.C. § 1125 (a) ............................................................................ 18

4

# I.    LAW AND ARGUMENT

## A.    BASKIN-ROBBINS' TERMINATION OF THE FRANCHISE AGREEMENTS AT ISSUE HERE WAS VALID BECAUSE IN-TERM COVENANTS NOT TO COMPETE ARE ENFORCEABLE UNDER CALIFORNIA LAW

In essence, Defendants contend that Baskin-Robbins cannot terminate his franchise agreement, even if he helped to open and operate a competing ice cream business in direct competition with his and other Baskin-Robbins stores, because covenants not compete are entirely unenforceable under California law.  That is not the state of the law as it relates to non-employment related contracts.  Indeed, such covenants have regularly been enforced in this jurisdiction.

On its face, Section 16600 of the California Business and Professions Code, which has been in existence since 1872, seems both broad and unequivocal, and would seem to render the enforceability of a non-compete provision contained in a business-to-business contract governed by California law questionable at best.  In fact, the issue is far less clear-cut.  Indeed, despite the seeming breadth of Section 16600, a significant number of federal and California courts have enforced non-compete covenants that place only a partial limitation on the party bound thereby.

In *Boughton v. Socony Mobil Oil Co.*, 41 Cal. Rptr. 714 (Ct. App. 1964), for example, the plaintiffs challenged a restriction in a deed prohibiting the use of certain property as a service station for twenty years.  The California Court of Appeal rejected the challenge.  Although the court characterized the restriction as not a personal covenant, but one involving land use, it made it clear that the restriction was valid, even if construed as falling on the plaintiffs personally: "Moreover, under this restriction the grantees are not prevented from dispensing petroleum products and operating a service station at any time at any other place and thereby directly competing with defendant." *Id*. at 715.  The court noted, "[W]hile the cases are uniform in refusing to enforce a contract wherein one is restrained from pursuing an entire business, trade or profession . . . , where one is barred from pursuing only a small or limited part of a business,

5

trade or profession, the contract has been upheld as valid." 41 Cal. Rptr. at 716. *See also Scott v. Snelling & Snelling, Inc.,* 732 F.Supp. 1034 (N.D.Cal.1990) California courts have held that only restrictive covenants that prevent one from engaging in an *entire* profession trade or business are void under § 16600). The court emphasized that the restriction had a limited geographical scope, and continued only for a limited time. *Id.* ("[P]laintiffs are not prohibited from carrying on the lawful business of selling petroleum products or operating a service station . . . , they are barred merely from doing so on those premises and then only for a limited time." *Id.* *Boughton* thus stands for the proposition that non-compete covenant narrowly tailored as to both time and location may withstand judicial muster. *See also Moran v. Harris,* 131 Cal.App.3d 913, 182 Cal.Rptr. 519, 522 (4th Dist.1982) (California courts have "been cautious in blithely applying public policy reasons to nullify otherwise enforceable contracts.").

Applying this standard, by definition, the restriction set forth by Baskin-Robbins' in-term covenant cannot—by any stretch of the imagination—be seen as restricting franchisees from engaging in an *entire* line of commerce or profession. The Franchise Agreements at issue here specifically allow the Defendants to engage in the operation of operate ice cream stores. The only restrictions placed on them, during the course of the Franchise Agreements, is to engage in ice cream sales under a different trade name. Thus, under *Boughton* and *Scott*, the policy basis for § 16600 does not apply and the restriction should be enforced.

Although *Boughton* is over thirty years old, it has never been repudiated, and, in fact, has recently been described as the "seminal" case concerning the "narrow restraint" exception to Section 16600. *Walia v. Aetna, Inc.*, 113 Cal. Rptr. 2d. 732, 734 (Ct. App. 2001). While it is true that there are no California state cases that have expressly relied on *Boughton* to enforce a covenant, that may stem from the fact that, in those cases, the covenant sought to be enforced was simply too broad to fall within *Boughton*'s exception. For example, in *Dent Wizard Int'l Corp. v. Schowengerdt*, B147763, 2002 Cal. App. LEXIS 2878 (Ct. App. Mar. 14, 2002), the

-6-

1    appellate court, after acknowledging *Boughton,* nevertheless reversed the trial court's judgment

2    enforcing the non-compete covenant before it.  *Id*. at 17-20.  That covenant, however, extended

3    to cover both the United States and Canada, *id*. at 20, and thus had a vastly larger geographical

4    scope than that in *Boughton*.  Likewise, in *Walia*, the court recognized the *Boughton* exception,

5    but found that the covenant before it, which prohibited the plaintiff from working as a

6    salesperson for any health care company in the entire state of California, did not fall within it.

7    113 Cal. Rptr. 2d at 744.  The more recent cases thus support *Boughton*'s continuing vitality,

8    while at the same time emphasizing the limited scope of the "narrow" restraint exception.

9         For example, in a case interpreting the same contractual provision at issue in the present

10   case, a federal district court in North Carolina upheld the termination of a Baskin-Robbins

11   franchise agreement under California law based on the franchisee's violation of the in-term

12   covenant not to compete.  *Keating v. Baskin-Robbins USA, Co.*, 2001 WL 407017 (E.D.N.C.

13   March 27, 2001).  In *Keating*, the franchisees had effectively ceased doing business as a Baskin-

14   Robbins franchise during the term of their franchise agreement and had begun to sell another

15   brand of ice cream at their store.  *Id.* at *2.  After Baskin-Robbins discovered the franchisees'

16   activities, it terminated the franchise agreement and sought an order stating that the termination

17   was proper.  *Id.* at *13.  The court upheld the termination, commenting that it was "beyond cavil

18   that an ice cream franchise may reasonably require a franchisee not to operate a competing ice

19   cream store during the term of its franchise agreement."  *Id.* at *14.  While recognizing that some

20   post-termination covenants have not been enforced in California, the court in *Keating* held that

21   the cases "clearly established" that in-term covenants did not violate California law.  *Id.*  As

22   such, the court concluded that the franchisees in *Keating* had breached the in-term covenant and

23   that the "termination of the franchise agreement was warranted."  *Id.*; *see also Great Frame Up

24   Systems, Inc. v. Jazayeri Enterprises, Inc.*, 789 F. Supp. 253, 256 (N.D. Ill. 1992) (in-term

25   covenants valid under California law).

-7-

The same approach was recently taken by the Ninth Circuit in *Comedy Club, Inc. v. Improv West Assocs., Inc.*, ___ F.3d ___, 2007 WL 25567202 (9th Cir. Cir., Sept. 7, 2007). That case involved an agreement in which Improv West, the creator and owner of the trademark "Ipmorv" issued an exclusive nationwide license to Comedy Club, Inc. ("CCI") to open comedy clubs under that name. Among other things, the agreement included a covenant that prevented CCI from opening any non-Improv comedy clubs in the contiguous United States. *Id.* at *7. When CCI failed to open the required number of clubs, Improv West declared that CCI was in default and terminated the agreement. CCI then sought injunctive relief on the grounds that the covenant was void under § 16600 and the issue was ultimate submitted to arbitration. The arbitrator subsequently ruled that the covenant not to compete was fully enforceable and that CCI was prevented from opening any additional clubs under a non-Improv tradename anywhere in the United States. *Id.* a

Despite the fact that the Ninth Circuit held that the covenant was not fully enforceable, it confirmed several key principles that buttress the conclusion that the in-term covenant not to compete at issue here is fully enforceable. First, the court noted that under the holding set forth in *Dayton Time Lock Service, Inc. v. Silent Watchman Corp.*, 52 Cal. App. 3d 1 (1975), in-term covenants not to compete "are not necessarily invalid" and can be enforced when they do not foreclose competition in a substantial share of the line of commerce at issue. *Id.* at *9. Second, the court noted California courts are less willing to approve in-term covenants not to compete "outside of the franchise context because there is not a need 'to protect and maintain [the franchisor's] trademark, trade name and goodwill." *Id.* at *8 quoting *Kelton v. Stravinski*, 138 Cal. Rptr.3d 877, 882 (2006). Finally, the Ninth Circuit enforced the covenant not to compete in against CCI in those counties where it currently owned and operated clubs with the Improv trade name.

-8-

The court in *Kelton*, moreover, explained in detail the justification for treating covenants not to compete in the franchise context differently from those in non-franchise contexts. Franchising, it noted, "is a heavily regulated form of business in California" and the "franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor." 138 Cal. Rptr.3d at 881. As such, the court noted, the franchisor retains some control over the franchisee "as is necessary to protect and maintain its trademark, trade name and goodwill." *Id.* at 881-82. Thus, a franchisor "must maintain some control over the franchisee" and, the *Kelton* court concluded, it "may employ an 'exclusive-dealing contract' to promote and protect the franchise."

Other cases have also followed this line of reasoning. For example, in *General Commercial Packaging v. TPS Package Eng'g, Inc.*, 114 F.3d 888 (9th Cir. 1997) (per curiam), General Commercial, a provider of crating and packing services to businesses in California and Florida, selected TPS, the defendant, as one of its subcontractors in California. To protect its business relationships with its California customers, General Commercial required TPS to enter into a contract containing a covenant by which TPS agreed not to "back-solicit" General Commercial's customers for a period of one year following the contract's termination. After TPS began working directly with one of General Commercial's California customers, General Commercial brought suit to enforce the covenant. Although the district court granted TPS's motion for summary judgment on the covenant issue, the Ninth Circuit reversed, finding that the covenant was enforceable under Section 16600.

Citing *Boughton*, the court of appeals declared, "[S]ection 16600 does not impair General Commercial's contract with TPS unless it entirely precludes TPS from pursuing its trade or business." 114 F.3d at 890. Although TPS argued that *Boughton* involved a restraint on the use of property, rather than a restraint on the pursuit of a business, the Ninth Circuit, while agreeing that the case had "some nexus" to a piece of property, found that nexus "not Dispositive." *Id.*

-9-

The court held that the covenant agreed to by TPS was valid "unless it completely restrain[ed]" the company from engaging in the crating and packing business. *Id.* at 891. Because TPS could make no such contention, the court ruled that the trial court's grant of summary judgment was error.

Similarly, in *IBM v. Bajorek*, 191 F.3d 1033 (9th Cir. 1999), the Ninth Circuit again upheld a non-compete agreement against a challenge brought under Section 16600. In *Bajorek*, a former IBM executive, Dr. Bajorek, sued that company after it cancelled certain stock options that he had been granted during his employment with the company. The option agreements specified that Dr. Bajorek would forfeit any profits he realized from exercising the options if he went to work for an IBM competitor within six months after doing so. Despite that provision, Dr. Bajorek left IBM, immediately began working for one of its competitors, and exercised the options, which were then worth over $900,000. The court held that the non-compete covenant was valid, reasoning that it excluded him from working in only "one small corner of the market," and did not "preclude him from engaging in his profession, trade, or business." *Id.* at 1041. Distinguishing *Muggill v. Reuben H. Donnelly Corp.*, 398 P.2d 147 (Cal. 1965), in which the California supreme court held invalid a retirement plan making an employee's pension forfeitable if he went to work for a competitor "at any time" after his retirement, the Ninth Circuit reasoned, "It is one thing to tell a man that if he wants his pension he cannot ever work in his trade again . . . . , and quite another to tell him that if he wants a million dollars from his stock options, he has to refrain from going to work for a competitor for six months." *Id.*

California courts have also consistently found that Section 16600 does not apply where enforcement of a non-compete covenant is necessary to protect confidential information or trade secrets. The majority of the cases involving the trade secret exception have involved efforts by a business to protect its customer lists. *E.g.*, *Gordon v. Landau*, 321 P.2d 456 (Cal. 1958) (affirming injunction preventing the defendant from using the confidential customer lists of his

-10-

former employer); *American Credit Indem. Co. v. Sacks*, 262 Cal. Rptr. 92 (Ct. App. 1989) (same). However, under California law, a trade secret is defined fairly broadly; it includes any information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

> (1)   Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2)   Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d) (Deering 2001). Following the statutory language, the courts have looked to both the extent to which the information sought to be protected is "known or readily ascertainable" to others in the same business, *American Paper & Packaging Prods., Inc. v. Kirgan*, 228 Cal. Rptr. 713, 717 (Cal. Ct. App. 1986), and the efforts made by the business to protect that information, *Sacks*, 262 Cal. Rptr. at 97 (noting that employer required employees to sign confidentiality agreements with respect to a variety of information). Here the information sought to be protected is that which is used in the operation of a Baskin-Robbins ice cream store, including costs, prices, marketing, standards of operations and so forth.

For all of these reasons, Defendants' contention that the in-term covenant not to compete is void and unenforceable under California law should be rejected. Restrictions which allow franchisees to operate under valid franchise agreements and not use the trade secrets and other information they garner through access to the franchisor's methods of operation can and should be enforced. They do not restrict the Defendants from conducting business in this particular line of commerce and thus do not run afoul the of the policy basis for § 16600. At the very least, Baskin-Robbins should be allowed to develop discovery in terms of what information Defendants had access to as Baskin-Robbins franchisees and the extent to which they used such information in opening and operating the Country Creamery location.

-11-

**B.    THE TERMINATION OF THE FRANCHISEE AGREEMENTS WAS VALID UNDER THE CALIFORNIA FRANCHISE RELATIONS ACT**

Defendants' further argument that the termination of their Franchise Agreements was invalid under the California Franchise Relations Act ("CFRA"), Cal. Bus. & Prof Code § 2000, *et seq.*, is similarly flawed and incorrect.  As Defendants correct point out, the CFRA usually adequate notice and an opportunity to cure prior to termination of a franchise agreement.  Cal. Bus. & Prof Code § 20010, 20020.  However, § 20021 provides that a franchise agreement can be terminated under the CFRA where the franchisee has engaged in "conduct which reflects materially and unfavorably upon the operation and reputation of the franchise business and system."  And, indeed, the Notice of Termination specifically states that the Franchise Agreement at issue here were being terminated because the Defendants had breached provisions the Franchise Agreement that prohibited the franchisee from "do[ing] or perform[ing], directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Names and Marks of the Baskin-Robbins System (see Paragraphs 15.2 and 15.2.1 of the Franchise Agreement for PC 361197 and Paragraphs 8.0 and 8.0.1 of the Franchise Agreement for PC 340372)."  The same allegation was raised in the Second Amended Complaint.  *Id.* at ¶ 63 (Defendants' "actions have also caused and continue to cause irreparable harm to Baskin-Robbins, including harm to Baskin-Robbins' reputation and goodwill.").

Above and beyond all of this, however, remains the fact that Baskin-Robbins gave the Defendants the opportunity to cure the breaches and they had every opportunity to do so.  The Notice of Termination plainly states that if the Defendants wanted to affect a cure of the breach, that they would be give 30 days from the date of receipt of the notice to do so and a longer period if the applicable law required it.  *See* Notice of Termination, attached to Motion to Dismiss, Dhillon Decl., Ex. 3 at 2.  Defendants have not contended in their Motion to Dismiss or elsewhere that they have attempted to affect a cure, nor proffered what that cure would and more

than thirty days have passed since the Notice was issued.    The fact that this lawsuit was initiated

prior to the running of the time period in no way prevented the Defendants from curing the

breach.  After all, they could have, if they had wanted to, stopped operating the Country

Creamery store at any time after the Notice was issued and no such action was taken.  Therefore,

Baskin-Robbins was within its right under the CFRA to terminate both Franchise Agreement

without the opportunity to cure. Therefore, Defendants' contention that Baskin-Robbins did not

give the Defendants an opportunity to cure, if indeed it needed to under the CFRA, should be

rejected in full.

Finally, contrary to Defendants' contention, the Concord Franchise Agreement

specifically allows termination without the opportunity to cure.  As set forth in the Second

Amended Complaint, the agreement contains a cross-default provision which allows Baskin-

Robbins to terminate the Concord Franchise Agreement without the opportunity to cure the

default if Baskin-Robbins has terminated any other franchise agreement between itself and the

franchisee.  Second Amended Complaint at ¶ 25.  Thus, there was a basis for Baskin-Robbins to

terminate both agreements at issue here without the opportunity to cure.

## C.    THE FRAUD CLAIM IN THE SECOND AMENDED COMPLAINT WAS SET FORTH WITH SUFFICIENT PARTICULARITY

Rule 9(b) of the Federal Rules of Civil Procedure provides that: "In all averments of

fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred

generally."  One of the Rule's avowed purposes is to "appris[e] the defendant of the claim

against him and of the acts relied upon as constituting the fraud charged."  5 Charles Alan

Wright and Arthur R. Miller, Federal Practice and Procedure ("Wright & Miller"), § 1297 at 608

(1990).  There is no explicit standard for determining the amount of detail necessary to meet the

Rule 9(b) requirement; such determinations are made on a case-by-case basis. *Id.* §1296 at 582.

Plaintiffs are required to provide such detail, not for its own sake, but to put defendants on notice

-13-

so that a meaningful response may be prepared.  *Republic Env. Systems, (PA), Inc. v. Reichhold Chemicals, Inc.*, 154 F.R.D. 130, 131 (E.D. Pa. 1994); *see also* Wright & Miller § 1298 at 648 (basic consideration as to the sufficiency of a pleading under Rule 9 is how much detail is necessary to give notice to the adverse party to allow the filing of a responsive pleading). In pleading fraud claims, the courts have never required parties to adhere to a standard of absolute particularity.  Instead, as the Ninth Circuit explained in *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993), the standards of particularity under Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge because "[i]n such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts."  *See also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (Rule 9(b) must be applied "with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.")   Thus, parties need not plead the date, time and place the fraud occurred place as long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985); *Medimatch, Inc. v. Lucent Technologies Inc.*, 120 F.Supp.2d 842, 857 (N.D. Cal. 2000) (holding that fraud allegations were pleaded with particularity "despite some ambiguity of timing," because it was apparent from the complaint that the plaintiffs alleged that the defendants had a general knowledge of the Y2K problem at issue in that case and defendants had specific knowledge of the defect at issue before the contracts were entered).

There is no mystery to Baskin-Robbins' fraud claim in this case and Defendants cannot pretend to be surprised either by the fact that these claims have been raised against them or the contents of those claims.  As paragraphs 31 through 66 of the Second Amended Complaint lay out in detail, Baskin-Robbins' fraud claim derives from the activities engaged in by Defendant Sukpran Gill with respect to establishing a competing ice cream store under the trade name

-14-

"Country Creamery" and the steps he took to conceal his involvement from Baskin-Robbins. The Second Amended Complaint specifies when the statement at issue were made (in March or April of 2007), to whom they were made (Bill Gault, a Baskin-Robbins employee) and the substance of the statement (that equipment purchased from Baskin-Robbins was to be used for his present Baskin-Robbins franchises and not in the Country Creamery store, where they actually ended up). *See* Second Amended Complaint at ¶¶ 43-51.   In actuality, there are no additional details to provide, unless the are in the possession of the Defendants. By providing such details, the fraud claim meets all of the requirements for particularity under Rule 9(b) because it has adequately provided the nature and subject of the fraud sufficient to give the Defendants notice of the claim and the basis for filing a responsive pleading.

Defendants further contention that the purchase of the dipping cabinets was "immaterial" is simply wrong.  The convert manner in which Sukpran Gill purchased the equipment was a fraud on Baskin-Robbins because it was not able to discover the fact that one of its franchisees was opening a competing business nearby another Baskin-Robbins franchise is relevant to Baskin-Robbins fraud claim and the damage to its goodwill.  It is the false statements Gill made to Baskin-Robbins about the equipment, not just the equipment itself, which are relevant to this action.

**D.    BASKIN-ROBBINS HAS STATED A CLAIM FOR VIOLATIONS OF FEDERAL TRADEMARK LAWS**

Defendants' use of Baskin-Robbins's proprietary marks after termination constitutes trademark infringement under the Lanham Act.  To prevail on this claim, Baskin-Robbins must establish  (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.  *Department of Parks & Recreation v. Bazaar El Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

Applying these elements in this case, it should first be noted that Baskin-Robbins's marks have been properly registered in accordance with the Lanham Act and are thus valid and legally

1    protectable.  Stat. of Facts ¶ 15; *see also Frank Brunckhorst Co. v. G. Heileman Brewing Co.,*

2    *Inc.*, 875 F. Supp. 966, 975 (E.D.N.Y. 1994) ("The existence of a trademark registration is prima

3    facie evidence of a valid trademark").  In addition, Defendants have used and continue to use

4    these marks.  Stat. of Facts ¶¶ 2, 3, 24.

5
          Second, it is widely recognized that there is a high risk of consumer confusion when a

6    terminated franchisee continues to use the former franchisor's trademarks.  *See S & R Corp. v.*

7    *Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 375 (3d Cir. 1992).  In such cases, a federal appellate court

8    explained, the "likelihood of confusion is inevitable."  *Opticians Ass'n v. Independent Opticians*,

9    920 F.2d 187, 195 (3d Cir. 1990).  As a leading treatise on trademark law has commented, cases

10   where a defendant uses an identical mark on competitive goods *are* "open and shut."  *Id.*

11   (quoting 2 *McCarthy, Trademarks and Unfair Competition*, § 23:3) (emphasis added).

12
          Indeed, Defendants' status as "holdover" franchisees is *dispositive* of the trademark

13   infringement issue. *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1002 (S.D. Fla. 1992)

14   (terminated franchisee's continued use of its former franchisor's trademarks constitutes

15   trademark infringement); *see also* McCarthy, *McCarthy on Trademarks and Unfair Competition*

16   § 25.07[1] ("Once a license contract is terminated, there is no doubt that the ex-licensee has no

17   authorization or consent to continue use of the mark.").

18
          Defendants' Franchise Agreements have been validly terminated and thus they are

19   operating as holdover franchisees.  This is dispositive of the issue of infringement and therefore

20   there is no need to conduct the Ninth Circuit's test for determining likelihood of confusion.  *See*

21   *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir 1979).  However, likelihood of

22   confusion would be found under such an analysis.[1]

23

24

25   _____

26   [1]  (1) Strength of mark: Baskin-Robbins' marks are registered under the Lanham Act and
     backed by millions of dollars in advertising; (2) Degree of similarity of the marks: the marks in
27   question are the same because Defendants continue to use the Baskin-Robbins marks; (3)
     Similarity of products: the products are identical because Defendants continue to operate their
28   store as if they were *bona fide* Baskin-Robbins franchisees; (4) Similarity of the retail facilities:
     the facilities are the same; (5) Similarity of the advertising: Defendants continue to benefit from

1   Thus, Defendants are no longer licensed to use the Baskin-Robbins trademarks and trade

2   name.  Their status as "holdover franchisees" establishes the likelihood of confusion as a matter

3   of law.  Baskin-Robbins is thus likely to succeed on the merits of its claim for trademark

4   infringement based on Defendants' continued unlicensed use of the Baskin-Robbins trademarks

5   and trade names.

6       The same conclusion should be reached with respect to Baskin-Robbins's counts for trade

7   dress infringement and unfair competition.  In order prove these claims, Baskin-Robbins must

8   show: (1) that its trade dress is inherently distinctive or has acquired secondary meaning; (2) that

9   its trade dress is primarily non-functional; and (3) that Defendants' trade dress is confusingly

10  similar.  *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001).

11      With respect to unfair competition, the "critical question" is "whether there is a

12  likelihood of confusion, mistake, or deception between the registered mark and the allegedly

13  infringing mark."  *Majeed*, 805 F. Supp. at 1001 (quoting *John H. Harland Co. v. Clarke Checks,*

14  *Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)); s*ee also Century 21 Real Estate Corporation, Inc. v.*

15  *Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) (use of the word "Century" by a former Century 21

16  real estate franchisee operating as a realtor and in same loction as his former franchisor created

17  likelihood of confusion and thus constituted trademark infringement and unfair competition

18  under federal law); *Baskin-Robbins, Inc. v. Taj California, Inc.*, 2003 WL 22768662, *1 (C.D.

---

Baskin-Robbins's advertising of licensed Baskin-Robbins franchisees; (6) Defendants' intent: Defendants intend to pass off their store as an authorized Baskin-Robbins store despite the knowledge that their Franchise Agreements have been terminated; (7) Actual confusion: Defendant's unauthorized use of Baskin-Robbins' marks can have no result other than to cause actual confusion because customers cannot possibly know that Defendants are not licensed Baskin-Robbins franchisees; (8) Proximity of the products as they are sold: Defendants are selling products through identical retail outlets as if they were licensed Baskin-Robbins franchisees; (9) Bridging the gap: Baskin-Robbins already offers its products through identical retail outlets to the same customers; (10) Quality of the respective goods: even if Defendants are selling quality products, that would only heighten the confusion to customers; and, (11) Sophistication of prospective purchasers: Baskin-Robbins' sales are frequently impulse sales and thus not subject to a high degree of scrutiny.  *See Majeed*, 805 F. Supp. at 1002-03 and *Burger King Corp. v. Hall*, 770 F. Supp. 633, 638 (S.D. Fla. 1991) (conducting similar analysis for holdover franchisees).

Cal. Oct. 21, 2003) (holding that a Baskin-Robbins franchisees' "continued use of [Baskin-Robbins's] trademarks, trade dress, and trade name after termination of the Franchise Agreements constitutes trademark infringement, trade dress infringement, and unfair competition in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114 and § 43 of the Lanhan Act 15 U.S.C. § 1125 (a).").

Baskin-Robbins has made the requisite showing here and is thus likely to succeed on the merits.  Defendants are operating under the same trademarks, in the same locations and offering the same products as they were prior to the date upon which the franchise agreements at issue were terminated.  The likelihood of confusion, the key factor in this analysis, is self-evident.  Defendants' use of Baskin-Robbins's trademarks, trade name and trade dress after termination of the Franchise Agreements thus demonstrates Baskin-Robbins' likelihood of success on its trade dress and unfair competition claims.

Defendants acknowledged in both the Pittsburg and Concord Franchise Agreements that their breach of the restrictions on the use of Baskin-Robbins proprietary marks and trade secrets would cause irreparable harm to Baskin-Robbins.   Second Amended Complaint at ¶ 19.  These covenants, in and of themselves, are dispositive of the question of whether Baskin-Robbins has incurred such harm.  However, even if such acknowledgments were not set forth in the Franchise Agreements, it is widely acknowledged that such harm is created in circumstances like the ones present in this case.

It is well settled that, in a trademark case, for example, irreparable harm "necessarily follows from establishment of a likelihood of confusion among consumers." *Nabisco Brands, Inc. v. Conusa Corp.*, 722 F. Supp. 1287, 1290, *aff'd*, 892 F.2d 74 (4th Cir. 1989).  Because Baskin-Robbins is likely to succeed on its claim that Defendants' status as holdover franchisees constitutes a likelihood of confusion, it "necessarily follows" that Baskin-Robbins is suffering irreparable harm.  This presumption is based on the notion that a franchisor, like any trademark

-18-

owner, has the right to license others to use its trademarks only in the manner that it prescribes. The unauthorized or unlicensed use of those marks creates a situation where the franchisor no longer can control the reputation and goodwill of its trademark.

Courts have consistently held that the lack of control amounts to irreparable injury warranting an injunction. *Long John Silver's, Inc. v. Washington Franchise, Inc.*, 1980 U.S. Dist LEXIS 16635, at *12 No. 80-540-A (E.D. Va. June 24, 1980) ("infringement is difficult to quantify and thus lends itself to injunctive relief, . . . ."); *Merry Maids Limited Partnership v. Kamara*, No. Y-98-3564, 1998 U.S. Dist. LEXIS 19059, at *3-4 (D. Md. December 10, 1998) (quoting *Long John Silver's*, 1980 U.S. Dist LEXIS 16635). Similarly, the Third Circuit in *Jiffy Lube, supra*, held that "once a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act." 968 F.2d at 375.

Baskin-Robbins has invested a tremendous amount of resources over the years in building the considerable goodwill associated with its marks. Second Amender Complaint at ¶¶ 13-16. Plaintiffs' conduct in continuing to operate the Pittsburg and Concord Stores after termination of the Franchise Agreements interferes with Baskin-Robbins's ability to control the quality of the goods and services which Defendants continue to provide under the Baskin-Robbins marks. Consequently, Baskin-Robbins has suffered and continues to suffer irreparable harm.

Given these principles, Baskin-Robbins has stated a claim for which relief can be granted under Rule 12(b)(6) on its trademark infringement claims.

/ / /

/ / /

/ / /

/ / /

/ / /

1

## II.    <u>CONCLUSION</u>

2

For the foregoing reasons, Baskin-Robbins respectfully requests that Defendants' Motion

3

to Dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b) be denied.

4

5

DATED: October 18, 2007                    MARIA RODRIGUEZ
                                           SEYFARTH SHAW LLP

6

7                                          ROBERT L. ZISK
                                           ERIC L. YAFFE

8                                          JEFFREY L. KARLIN

9                                          By  /s/ Maria Rodriguez
                                           Attorneys for Plaintiffs

10                                         BASKIN-ROBBINS FRANCHISED
                                           RESTAURANTS LLC AND BR IP

11                                         HOLDER LLC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA1 6660826.1

1

2

**PROOF OF SERVICE**

3

STATE OF CALIFORNIA      )

                         )    ss

4

COUNTY OF LOS ANGELES   )

5

      I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Seyfarth Shaw LLP, 2029 Century Park East, Suite 3300, Los Angeles, California 90067-3063.  On October 18, 2007, I served the within documents: MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) & 9(b)

6

7

8

☐     I sent such document from facsimile machine (310) 201-5219 on _____, 2007.  I certify that said transmission was completed and that all pages were received and that a report was generated by facsimile machine (310) 201-5219 which confirms said transmission and receipt.  I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

9

10

11

12

☒     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

13

14

☐     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

15

16

☐     by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at Los Angeles, California, addressed as set forth below.

17

18

☐     by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

19

20

    Harmeet K. Dhillon, Esq.
Dhillon & Smith
214 Grand Avenue, Suite 400
San Francisco, CA  94108
Telephone:  415-433-1700
Facsimile:  415-520-6593

21

22

23

24

    I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than on day after the date of deposit for mailing in affidavit.

25

26

27

    I declare that I am employed in the office of a member of the bar of this court whose direction the service was made; executed on October 18, 2007, at Los Angeles, California.

28

                        /s/ Maritza Estrada

LA1 6660826.1/54578-5